Leda Dunn Wettre, Esq.
ROBINSON, WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400 (tel)
lwettre@rwmlegal.com

and

Stephen J. Zralek, Esq.
BONE McALLESTER NORTON PLLC
Nashville City Center
511 Union Street, Suite 1600
Nashville, Tennessee 37219
(615) 238-6300 (tel)
szralek@bonelaw.com
Attorneys for Defendants Aston Asset Management, LLC
and Smart Portfolios, LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HENNION & WALSH, INC.

        Plaintiff,                Civil Action No.: 2:08-cv-04262 (JAG)

   v.

ASTON ASSET MANAGEMENT, LLC
and SMART PORTFOLIOS, LLC,
collectively and individually,

        Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM & FOR LACK OF SUBJECT MATTER
JURISDICTION OVER STATE LAW CLAIM**

RETURN DATE: December 1, 2008

{00327324.1}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................ii

I.  SUMMARY OF MOTION TO DISMISS.................................................................1

II.  RELEVANT BACKGROUND ...............................................................................3

A.  The Complaint Fails to Aver Facts Needed to Establish Infringement................................3

B.  The Complaint Fails to Aver Facts Establishing Anything Other than Niche Fame for Plaintiff's Marks ...................................................................................................4

C.  The Complaint Fails to Aver Grounds Sufficient to Warrant Cancelation of Defendants' Registration in the Mark SMART PORTFOLIOS, LLC ..........................................................4

D.  Four Unrelated Entities Presently Co-Exist in Use of SMART ...........................................5

III.  LEGAL STANDARD ON MOTION TO DISMISS ..............................................5

IV.  LEGAL ARGUMENT.............................................................................................7

A.  The Complaint Fails to State a Claim of Dilution...................................................7

B.  The Complaint Fails to State a Claim of Infringement or Unfair Competition .................11

C.  The Complaint Fails to Aver Facts that Warrant Cancelation of Defendants' Registration in SMART PORTOLIOS LLC .....................................................................14

D.  The Consumer Fraud Claim Must be Dismissed because of Lack of Jurisdiction & for Failure to State a Claim .....................................................................................15

1.  Lack of Subject Matter Jurisdiction .............................................................15

2.  Failure to State a Claim ..................................................................................16

V.  CONCLUSION.........................................................................................................17

# TABLE OF AUTHORITIES

## Cases

A.J. Canfield Co. v. Honickman, 808 F.2d 291 (3d Cir. 1986) ...................................................14

Adidas America, Inc. v. Payless Shoesource, 529 F.Supp.2d 1215 (D. Or. 2007) ........................8

Anheuser-Busch, Inc. v. Andy's Sportswear, Inc., No. C-96-2783 THE, 1996 WL 657219 (N.D.
    Cal. Aug. 28, 1996) (unpublished)...........................................................................................10

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) .........................................................2, 5, 16

Board of Regents v. KST Electric, LTD, 550 F. Supp. 2d 657 (W.D. Tex. 2008) ........................7

Cardiology Consultants of North Morris v. UFCW Local 464A Health Reimb. Welfare Fund,
    No. Civ. 06-5557 (JAG) ............................................................................................................1

Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538 (3d. Cir. 1995)..............................15

Conley v. Gibson, 355 U.S. 41 (1957)..........................................................................................5

Ehrich v. B.A.T. Indust. P.L.C., 964 F. Supp. 164 (D.N.J. 1997)...............................................16

Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463 (3d Cir. 2005)............................12

Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463 (3d Cir. 2005)............................12

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997)......................................7

In re: Corestates Trust Fee Litigation, 39 F.3d 61 (3d. Cir. 1994) ..............................................15

interState Net Bank v. NetB@nk, Inc., 348 F. Supp. 2d 340 (D.N.J. 2004)................................14

Irrgang v. Masco Corp., No. CIV.A.01-6944, 2002 WL 253949 (E.D.P.A. Feb. 21, 2002)
    (unpublished) ..........................................................................................................................15

Kost v. Kozakewicz, 1 F.3d 176 (3d Cir. 1993)..............................................................................6

Louis Vuitton Malletier S.A. v. Haute Diggity Dog, 507 F.3d 252 (4th Cir. 2007) ......................8

Marshak v. Treadwell, 240 F.3d 184 (3d Cir. 2001) ...................................................................14

Mattel, Inc. v. Jcom, Inc., No. 97 Civ. 7191(SS), 1998 WL 766711 (S.D.N.Y. Sep. 10, 1998) (unpublished) .................................................................................................................. 10

Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997) .......................................... 6

Nabisco Brands, Inc. v. Quaker Oats Co., 547 F. Supp. 692 (D.N.J. 1982) ............................... 13

Nelson v. Keefer, 451 F.2d 289 (3d Cir.1971) ........................................................................... 15

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) .............................. 6

Pennsylvania Nurses Ass'n v. Penn. State Educ. Ass'n, 90 F.3d 797 (3rd Cir. 1996) ................ 16

Pittsburgh v. W. Penn Power Co., 147 F.3d 256 (3d Cir. 1998) ......................................... 1, 3, 7

R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc., No. 99-C-1174, 2004 WL 1613563 (N.D. Ill. July 19, 2004) (unpublished) ................................................................................ 10

Scheuer v. Rhodes, 416 U.S. 232 (1974) ..................................................................................... 6

Semerenko v. Cendant Corp., 223 F.3d 165 (3d Cir. 2000) ......................................................... 6

Snyder v. Harris, 394 U.S. 332 (1969) ...................................................................................... 15

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283 (1938) ........................................... 15

Thane Intern., Inc. v. Trek Bicycle Corp., 305 F.3d 894 (9th Cir. 2002) ............................... 8, 10

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992) ...................................................... 11

**Statutes**

132 F.3d at 906 .......................................................................................................................... 9

15 U.S.C. § 1064 ....................................................................................................................... 14

15 U.S.C. § 1064(3) ................................................................................................................... 14

15 U.S.C. § 1114(1) ................................................................................................................... 11

15 U.S.C. § 1125(a) ................................................................................................................... 11

15 U.S.C. § 1125(a)(1) ............................................................................................................... 12

iii

15 U.S.C. § 1125(c) ................................................................................................8, 14

15 U.S.C. § 1125(c)(2)(A) ..........................................................................................7, 8

15 U.S.C. § 1125(c)(1)................................................................................................8

15 U.S.C. § 1125(c)(2)................................................................................................9

28 U.S.C. § 1332........................................................................................................2

28 U.S.C. § 1332(a) ..................................................................................................15

28 U.S.C. § 1367(c)(3)................................................................................... 2, 15, 16

Fed. R. Civ. P. 8(a)(2)................................................................................................5

Fed. R. Civ. P. 12(b) ..................................................................................................7

Fed. R. Civ. P. 12(b)(1)............................................................................................15

Fed. R. Civ. P. 12(b)(6)..............................................................................................6

## Other Authorities

5A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure: Civil 2d § 1357.......6, 7

Barton Beebe, A Defense of the New Federal Trademark Antidilution Law, 16 Fordham Intell.

    Prop. Media & Ent. L.J. 1143, 1158 (2006) ...........................................................10

Marc L. Delflache et al., Life After Moseley: The Trademark Dilution Act, 16 Tex. Intell. Prop.

    L.J. 125 (2007)........................................................................................................10

McCarthy On Trademarks And Unfair Competition, § 24:104 ....................................11

McCarthy On Trademarks And Unfair Competition, § 24:106 ................................9, 11

Brent A. Olson, et al., Trademark Dilution Revision Act of 2006 – When a mark is "famous,"

    New Jersey Practice Series TM Business Law Deskbook § 12:39............................8

iv

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM & FOR LACK OF SUBJECT MATTER JURISDICTION OVER STATE LAW CLAIM**

Plaintiff overstates its rights in the three marks it uses and has registered.  As public records[1] obtained from the USPTO show, four unrelated entities currently use SMART as part of their marks in connection with financial services, and all four have been granted federal registration.  Plaintiff has not stated, and cannot state, an exclusive right to use the mark SMART.  The Complaint fails to establish why Plaintiff should be entitled to exclude Defendants from using SMART in describing their goods.

**I.       SUMMARY OF MOTION TO DISMISS**

Counts I, II and III of Plaintiff's complaint aver that Defendants' use of ASTON/SMART ALLOCATION ETF FUND infringes on Plaintiff's rights in three marks: SMART TRUST, SMARTGROWTH, and 10K SMARTTRUST.    Plaintiff's rights in these marks is narrower than Plaintiff would have the Court believe.  Plaintiff's registration of these marks gives it the exclusive right over only *these* marks, only in their *entirety*, and over no other marks.

Nowhere in the Complaint does Plaintiff assert that Defendants have used any of Plaintiff's three specific marks.  Instead, Plaintiff focuses on Defendants' use of the mark ASTON/SMART ALLOCATION ETF FUND.  Contrary to its arguments, Plaintiff has no right to exclude any other party from using SMART.  Further, Plaintiff does not aver that it has either registered or used SMART by itself.  Accordingly, Plaintiff has no grounds on which to assert infringement, under Section 32 or 43 of the Lanham Act, or under common law.

---

[1] See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (quoted favorably in Cardiology Consultants of North Morris v. UFCW Local 464A Health Reimb. Welfare Fund, No. Civ. 06-5557 (JAG), 2007 WL 4570160, *2 (D.N.J. Dec. 21, 2007) (unpublished) (Greenaway, J.) (explaining that, on a motion to dismiss, the court may consider averments in the complaint, documents attached or referenced in the complaint, and matters of public record).

1

Count V of Plaintiff's Complaint, which seeks to cancel Defendant Smart Portfolio's registration in the mark SMART PORTFOLIOS, fails to state a claim for the same reasons. To sustain a petition to cancel a registration, a complaint must aver that the defendant is using its own *registered* mark (here SMART PORTFOLIOS LLC) in violation of the plaintiff's rights. Here, Plaintiff makes no such averment, and instead avers merely that Defendants' use of SMART (but not Smart Portfolios, LLC's registered mark – SMART PORTFOLIOS LLC) infringes Plaintiff's rights.

Count IV of Plaintiff's Complaint, asserting dilution, merely provides "a formulaic recitation" of the elements of a dilution cause of action, which "will not do," under <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007). Under the Trademark Dilution Revision Act ("TDRA") of 2006, Plaintiff's dilution claim fails to state a claim because, based on the averments in the Complaint, there is no set of facts under which Plaintiff's marks have achieved anything other than "niche fame." The only dilution claims that can survive dismissal under the TDRA are those marks that have achieved nationwide fame and have become household names, such as BUICK, DUPONT and KODAK.

Finally, if the above counts are dismissed, Count VI, which asserts a state-law claim of consumer fraud, also must be dismissed. Procedurally, Dismissal of Counts I-V would destroy the court's diversity jurisdiction because Plaintiff seeks only injunctive relief under Count VI, 28 U.S.C. § 1332 requires the matter in controversy to exceed $75,000 for diversity jurisdiction to exist, and Plaintiff has failed to aver anything more than a single conclusory statement regarding the amount in controversy. Further, after dismissing all claims on which the Court has original jurisdiction, the Court should decline to exercise supplemental jurisdiction over this claim, pursuant to 28 U.S.C. § 1367(c)(3). Substantively, if the Court agrees that Plaintiff has failed to

state a claim on its infringement and dilution counts, then there is no basis for Plaintiff's consumer fraud claim, and it fails automatically.

## II.   RELEVANT BACKGROUND

Plaintiff's Complaint, documents referenced therein, and matters of public record demonstrate that Plaintiff has failed to state a claim upon which relief may be granted, even when taken in the light most favorable to Plaintiff and accepting all reasonable inferences that can be drawn from them.

### A.   The Complaint Fails to Aver Facts Needed to Establish Infringement

Plaintiff Hennion & Walsh, Inc. focuses on its use and registration of three marks: SMART TRUST, 10K SMARTTRUST, and SMARTGROWTH.[2]  Nowhere in the Complaint does Plaintiff aver that Defendants have ever used any of these three marks.

Nor does the Complaint aver that Plaintiff has registered the mark SMART by itself.  Yet Plaintiff demands that Defendants cease using the word "Smart" altogether in connection with investment fund and advisory services.[3]

Although Plaintiff refers to its three marks collectively as the "Hennion SMART funds,"[4] such shorthand is merely an abbreviation for ease of reference within the Complaint.  This conclusion is buttressed by a review of Plaintiff's web pages referenced in paragraph 19 (as permitted under the Pittsburgh decision, supra, n.1) yields no use by Plaintiff of "Hennion SMART funds" as a mark.

---

[2] Complaint at ¶¶ 11-18.
[3] Id. at ¶ 28.
[4] Id. at ¶ 14.

3

Plaintiff also complains about Defendants using the mark ASTON/SMART ALLOCATION ETF FUND.[5]  Nowhere in the Complaint, however, does Plaintiff aver that it has registered this same mark or that it has any rights in it.

**B.     The Complaint Fails to Aver Facts Establishing Anything Other than Niche Fame for Plaintiff's Marks**

As to establishing fame, which is required to show dilution, Plaintiff only recently began using the marks in question.  It did not begin using SMARTGROWTH until 2007[6]; SMART TRUST until 2003[7]; and 10K SMARTTRUST until 1999[8].  Plaintiff does not aver any specific facts regarding its efforts to acquire nationwide fame for its marks, but states merely that it has "expended large sums of money and substantial resources in advertising and promoting" its marks.[9]

Plaintiff acknowledges that its fame, if any, is limited to the niche of financial services: Plaintiff avers that it has "enjoyed substantial unsolicited publicity for its Hennion SMART funds *in the industry* . . . ." [10]  Further, Plaintiff admits that its unsolicited publicity for its investment funds has come "*as a result of their performance* in comparison to their peers"[11]; *not* as a result of Plaintiff's branding efforts.

**C.     The Complaint Fails to Aver Grounds Sufficient to Warrant Cancelation of Defendants' Registration in the Mark SMART PORTFOLIOS, LLC**

Plaintiff acknowledges that Defendant Smart Portfolios, LLC has registered the mark SMART PORTFOLIOS LLC mark with the USPTO.[12]  The registration is on the Principal

---

[5] Id. at ¶¶ 22, 25, 29.
[6] Id. at ¶ 11.
[7] Id. at ¶ 12.
[8] Id. at ¶ 13.
[9] Id. at ¶ 19.
[10] Id. at ¶ 19 (emphasis added).
[11] Id. (emphasis added).
[12] Id. at ¶ 21.

4

Register.[13]  The mark bears U.S. Registration No. 3,286,212.[14]  Nowhere in the Complaint does Plaintiff aver that Defendants have improperly used the mark they have registered: SMART PORTFOLIOS LLC.  Instead, Plaintiff bases its cancelation claim on grounds that Defendants have used SMART as part of ASTON/SMART ALLOCATION ETF FUND,[15] but the Complaint avers neither that Plaintiff has registered nor used SMART by itself.

### D.    Four Unrelated Entities Presently Co-Exist in Use of SMART

The USPTO, which is responsible for reviewing and either accepting or rejecting marks for registration, has registered the following marks comprised of the word "Smart" in connection with financial services in International Class 36, belonging to four separate entities whose use of the mark co-exists:[16]

| Mark | Owner |
|---|---|
| SMART PORTFOLIOS LLC | Smart Portfolios, LLC |
| SMART FUNDS | Hand Benefits & Trust, Inc. |
| JANUS SMART PORTFOLIOS | Janus |
| 10K SMARTTRUST | Hennion & Walsh |
| SMART TRUST | Hennion & Walsh |
| SMARTGROWTH | Hennion & Walsh |

### III.    LEGAL STANDARD ON MOTION TO DISMISS

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Twombly, 127 S. Ct. at 1959 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).

---

[13] Declaration of Paul W. Kruse, Esq., at ¶ 5, attaching the registration of the mark SMART PORTFOLIOS LLC, which are authentic copies of public records obtained from the USPTO web page, and which is referenced in the Complaint.
[14] Id.
[15] Complaint at ¶¶ 22, 25, 29.
[16] Declaration of Paul W. Kruse, Esq., at ¶¶ 5-10, attaching, for the Court's reference, the complete case files of the above six marks, which are authentic copies of public records obtained from the USPTO web page.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' *requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do*." Id. at 1959 (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Id. at 1960. The court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from it, and to view them in the light most favorable to the nonmoving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, *it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations*. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997) (emphasis added). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357. "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Examining documents attached to the complaint, referred to therein, or matters of public record does not convert the motion into one for summary judgment.  See Fed. R. Civ. P. 12(b).

## IV.    LEGAL ARGUMENT

### A.    The Complaint Fails to State a Claim of Dilution

Plaintiff's claim of dilution fails to acknowledge the change in the law in 2006 that requires a showing of nationwide fame of a mark, and not merely niche fame.  On October 6, 2006, President Bush signed into law the Trademark Dilution Act of 2006 ("TDRA"), which amended the Federal Trademark Dilution Act (FTDA).  See Board of Regents v. KST Electric, LTD, 550 F. Supp. 2d 657, 673 (W.D. Tex. 2008).[17]  Specific changes to the federal dilution law under the TDRA relevant to the present suit include a "reconfiguration of the factors used to determine whether a mark is famous for dilution purposes, including a rejection of dilution claims based on 'niche' fame." Id. at n.13 (citing 15 U.S.C. § 1125(c)(2)(A)).

Under the TDRA:

the owner of a *famous* mark . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

---

[17] No reported decision in the Third Circuit has addressed a dilution claim since enactment of the TDRA.

15 U.S.C. § 1125(c)(1) (emphasis added).  Plaintiff's complaint, however, fails to aver facts sufficient to warrant a finding that its marks are "famous" under the TDRA.  Instead, Plaintiff makes legally conclusory statements characterizing its marks as famous.

The TDRA specifically requires that the mark be "*widely recognized by the general consuming public of the United States* as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c) (2)(A) (emphasis added); <u>Adidas America, Inc. v. Payless Shoesource</u>, 529 F.Supp.2d 1215, 1244-45 (D. Or. 2007).  Such marks, courts have found, are limited to a select group, and include marks that connote a specific source, even when associated with unrelated goods, such as "DUPONT shoes, BUICK aspirin and KODAK pianos."  <u>See Louis Vuitton Malletier S.A. v. Haute Diggity Dog</u>, 507 F.3d 252, 268 (4th Cir. 2007) (citations omitted).  "In short, for purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark."  <u>Thane Intern., Inc. v. Trek Bicycle Corp.</u>, 305 F.3d 894, 911 (9th Cir. 2002).  In other words, "*the mark must be a household name*."  <u>Id.</u> (emphasis added).

The "'element of fame is the key ingredient' to a claim of federal trademark dilution, and should be addressed by a district court before reaching other issues."  Brent A. Olson, et al., <u>Trademark Dilution Revision Act of 2006 – When a mark is "famous"</u>, New Jersey Practice Series TM Business Law Deskbook § 12:39, at text accompanying n.15 (2008-09) (citations omitted); <u>see also id.</u> at n.28 (citing multiple cases across the country that hold the TDRA eliminated the possibility of establishing dilution with niche fame).

The TDRA sets forth four non-exclusive factors that are relevant when determining whether a mark is sufficiently famous for anti-dilution protection:

{00327324.1}

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;
(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark;
(iii) The extent of actual recognition of the mark;
(iv) Whether the mark was registered . . . on the principal register.

15 U.S.C. § 1125(c)(2).

The present Complaint fails to aver facts sufficient to qualify any of Plaintiff's three marks as "famous" under the TDRA.  Although the mark is registered, "[o]ne cannot logically infer fame from the fact that a mark is one of the millions on the federal Register.  On the other hand, one could logically infer lack of fame from a lack of registration . . . ."  4 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition, § 24:106, at 24-293 (4th ed.).

The Complaint is completely silent as to the second and third factors, above, and it avoids specifics on Plaintiff's efforts at advertising, as referenced in the first factor, above.  Rather, in the form of "sweeping legal conclusions cast in the form of factual allegations" prohibited in Morse, 132 F.3d at 906, Plaintiff avers generally that it has "expended large sums of money and substantial resources in advertising and promoting" its marks.[18]  Such pleading fails to state a claim of dilution.

At most, the Complaint reinforces the conclusion that the fame Plaintiff's marks enjoy is limited to the narrow field of financial services, if at all.  Plaintiff concedes as much: Plaintiff avers that it has "enjoyed substantial unsolicited publicity for its Hennion SMART funds *in the industry*[19] . . . ."  Further, Plaintiff admits that its unsolicited publicity for its investment funds has come "*as a result of their performance* in comparison to their peers[20]"; *not* as a result of Plaintiff's advertising and publicity efforts.

---

[18] Complaint at ¶ 19.
[19] Id. at ¶ 19 (emphasis added).
[20] Id. (emphasis added).

9

In the University of Texas' dilution claim in <u>KST</u>, it argued unsuccessfully that its longhorn logo mark enjoyed national fame. It presented evidence that its football games are regularly nationally televised, including the national championship game, in which its mark was prominently featured. 550 F. Supp. 2d at 677. Over 35 million people watched the championship game nationwide. <u>Id.</u> Additionally, the university's men's basketball team had been nationally televised 97 times in the past five seasons; its football helmet had been featured on two Wheaties' boxes; and it had earned the most royalties of any university in a single year for its college merchandise. <u>Id.</u> at 677-78. The university even earned nearly $400 million from retail sales of its products featuring the mark in stores such as Wal-mart and Target in 2005-06. <u>Id.</u> at 678.

The university argued that such evidence withstood summary judgment because it created at least a question of fact as to the mark's fame. <u>Id.</u> The court disagreed, however, and held that such evidence amounted to nothing more than niche fame. "[I]t is not at all clear that if one is not a college football fan . . . [that one] would recognize the [mark] as being associated with UT, as all of the evidence relates to the use of the logo in sporting events." <u>Id.</u> That court explained:

> One of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, <u>see</u> <u>Anheuser-Busch, Inc. v. Andy's Sportswear, Inc.</u>, 1996 WL 657219, No. C-96-2783 THE, (N.D. Cal. Aug. 28, 1996) (Budweiser's mark "unquestionably famous"); Camel cigarettes, <u>R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.</u>, 2004 WL 1613563, No. 99-C-1174 (N.D. Ill. July 19, 2004); Barbie Dolls, <u>Mattel, Inc. v. Jcom, Inc.</u>, 1998 WL 766711, No. 97 Civ. 7191(SS), (S.D.N.Y. Sep. 10, 1998), and the like. . . . [T]he fact remains that UT has not created a genuine issue of material fact that the longhorn silhouette logo is "a household name." <u>Thane Intern.</u>, 305 F.3d at 911. As one academic commentator put it, the "TDRA is simply not intended to protect trademarks whose fame is at all in doubt." Barton Beebe, <u>A Defense of the New Federal Trademark Antidilution Law</u>, 16 Fordham Intell. Prop. Media & Ent. L.J. 1143, 1158 (2006); <u>see also</u> Marc L. Delflache et al., <u>Life After Moseley: The Trademark Dilution Act</u>, 16 Tex. Intell. Prop. L.J. 125, 142-43 (2007) (noting that the TDRA rejects niche fame). The leading trademarks treatise agrees. 4 J. Thomas McCarthy, <u>McCarthy on Trademarks and</u>

10

Unfair Competition, § 24:104, at 24-280-81 (only "truly eminent and widely recognized marks" should be given the famous label). Because UT's evidence fails to demonstrate the extremely high level of recognition necessary to show "fame" under the TDRA, summary judgment is appropriate on this claim.

Id. at 679.

Similarly here, Plaintiff has failed to allege any set of facts that indicate its marks have become a "household name." At the most, the facts averred indicate that Plaintiff's marks enjoy fame only in the niche of financial services. Accordingly, Plaintiff has failed to state a claim of dilution, and such count must be dismissed.

### B.      The Complaint Fails to State a Claim of Infringement or Unfair Competition

Plaintiff has asserted three causes of action that are analyzed the same way: Count I (common law unfair competition), Count II (trademark infringement under Section 32 of the Lanham Act, codified at 15 U.S.C. § 1114(1)), and Count III (unfair competition under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a)).

To succeed on a claim for trademark infringement under section 32 of the Lanham Act, the owner of a valid and legally protectable mark must show that the defendant has used a confusingly similar mark. Section 32 provides in pertinent part:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of *a registered mark* in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1) (emphasis added).

The same standard is embodied in section 43(a) of the Lanham Act, which governs claims concerning *unregistered* marks – what some refer to as "unfair competition." See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (explaining that section 43(a) is

11

typically invoked when an owner claims protection in an unregistered mark).  That section provides, in pertinent part:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin . . . which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of [his or her] goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

The analysis for trademark infringement and unfair competition is the same.  Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 469-70 (3d Cir. 2005) (finding no likelihood of reverse consumer confusion).  "To prove either form of Lanham Act violation, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of *the mark* is likely to create confusion concerning the origin of the goods or services."  Id. at 470 (citations omitted).  The "law of trademark protects trademark owners in the exclusive use of *their* marks when use by another would be likely to cause confusion."  Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 469 (3d Cir. 2005) (emphasis added).

Plaintiff exaggerates its rights in its own marks.  Under section 32 of the Lanham Act, the only marks that Plaintiff has the *prima facie* exclusive right to use are those that it has registered.  Under common law and section 43 of the Lanham Act, the only marks that Plaintiff has the exclusive right to use are those that it has actually used.  The Complaint avers that Plaintiff has used and registered only three marks: SMART GROWTH, SMART TRUST, and 10K SMARTTRUST.  Accordingly, the only marks that Plaintiff has a right to exclude others from using are these three marks.

12

Plaintiff has averred no set of facts on which to base its infringement and unfair competition claims. Plaintiff has not averred, for example, that Defendants are using any of the above three marks. Plaintiff has not averred that it has registered or even used SMART by itself. Plaintiff has not averred that it has registered the mark it accuses Defendant of using: ASTON/SMART ALLOCATION ETF FUND. The law gives Plaintiff no right to exclude Defendants from using this mark.

Bolstering the conclusion that Plaintiff has no exclusive right to the mark SMART, the USPTO has registered marks encompassing the term "Smart" from four unrelated entities, all of which are connected to financial services. As discussed above, the USPTO has registered marks that include the term SMART from not only Plaintiff and Defendant Smart Portfolios, LLC, but also mutual fund giant Janus, as well as Hand Benefits & Trust, Inc. These marks include not only Plaintiff's and Defendants' marks, but also SMART FUNDS and JANUS SMART PORTFOLIOS.

Given both the widespread use of marks that use SMART in the financial services, and given the USPTO's registration of multiple such marks, Plaintiff's rights in its marks that encompass SMART are limited and narrow, as a matter of law. See Nabisco Brands, Inc. v. Quaker Oats Co., 547 F. Supp. 692, 699 (D.N.J. 1982) (explaining that the mark CREAM OF WHEAT "at best [is] entitled to limited protection . . . especially . . . because there are other products on the market, such as Cream of Rice, Cream of Rye, and Cream of Oats, all of which are consumer foods.").

Accordingly, as Plaintiff has failed to state a claim of infringement or unfair competition, Counts I, II and III must be dismissed.

13

C.    **The Complaint Fails to Aver Facts that Warrant Cancelation of Defendants'
Registration in SMART PORTOLIOS LLC**

Section 14 of the Lanham Act provides in pertinent part as follows:

A petition to cancel a registration of a mark, stating the grounds relied
upon, may . . . be filed . . . by any person *who believes that he is or will be
damaged*, including as a result of dilution under section 1125(c) of this title, *by
the registration of a mark* on the principal register established by this chapter . . . .

15 U.S.C. § 1064 (emphasis added).

In the present Complaint, Count V asserts that Plaintiff is entitled to cancel Defendant

Smart Portfolios, LLC's registration in the mark SMART PORTFOLIOS, LLC.    Plaintiff's

argument is flawed, however, because nowhere in the Complaint does Plaintiff aver that

Defendants' use of the mark SMART PORTFOLIOS LLC has damaged Plaintiff.    Instead,

Plaintiff's infringement and dilution claims focus on Defendants' use of ASTON/SMART

ALLOCATION ETF FUND.

For Count V to survive dismissal, the Complaint would have to aver that *Plaintiff* has

superior rights in Defendant Smart Portfolios, LLC's registered mark – SMART PORTFOLIOS

LLC – which Plaintiff has not done.   Otherwise, pursuant to 15 U.S.C. § 1064(3), the Complaint

would have to aver that Smart Portfolios, LLC procured the registration through fraud, see

Marshak v. Treadwell, 240 F.3d 184, 187, 200 (3d Cir. 2001); that the registered mark has

become generic, see A.J. Canfield Co. v. Honickman, 808 F.2d 291, 299 n.9 (3d Cir. 1986); or

that the mark has been abandoned.   interState Net Bank v. NetB@nk, Inc., 348 F. Supp. 2d 340,

352 (D.N.J. 2004).   Plaintiff has not averred any facts that support a claim for cancellation.

Accordingly, Count V of the Complaint fails to state a claim and must be dismissed.

14

**D.**     **The Consumer Fraud Claim Must be Dismissed because of Lack of Jurisdiction & for Failure to State a Claim**

If the above counts are dismissed, then Count VI, which asserts a state-law claim of consumer fraud, also must be dismissed.  Here, Count VI must be dismissed both for lack of subject matter jurisdiction and for failure to state a claim.

**1.     Lack of Subject Matter Jurisdiction**

Procedurally, the Court lacks subject matter jurisdiction and the Complaint must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1).  Plaintiff asserts the Court has jurisdiction over its pendent state law claim in Count VI, pursuant to both 28 U.S.C. § 1332(a) (diversity) and 28 U.S.C. § 1367(c)(3) (supplemental).

28 U.S.C. § 1332(a) requires the matter in controversy to exceed $75,000.  "The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); see also Snyder v. Harris, 394 U.S. 332, 339-40 (1969) (explaining that this intent is evidenced by Congress' action in "steadily increasing through the years the jurisdictional amount requirement"); Nelson v. Keefer, 451 F.2d 289 (3d Cir.1971) (discussing in-depth Congress' intent for courts to weed out diversity cases that fail to satisfy the monetary threshold).

Here Plaintiff seeks only injunctive relief under Count VI.  "When a diversity action plaintiff seeks injunctive relief the district court must assess the value of the right sought by the plaintiff in order to determine whether the requisite amount for diversity jurisdiction is present."  Irrgang v. Masco Corp., No. CIV.A.01-6944, 2002 WL 253949 *1 (E.D.P.A. Feb. 21, 2002) (unpublished) (holding that plaintiff had failed to meet $75,000 threshold) (citing Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d. Cir. 1995); In re: Corestates Trust Fee

15

<u>Litigation</u>, 39 F.3d 61, 65 (3d. Cir. 1994)).  The court in <u>In re: Corestates</u> held that the plaintiff failed to meet the monetary threshold when examining the value of injunctive relief.  39 F.3d at 66.

In the present complaint, the only averment relevant to determining whether Plaintiff satisfies the amount in controversy requirement is a legal conclusion stated in paragraph 2: "The amount in controversy exceeds $75,000."[21]  Plaintiff does not assert that such amount is related to the value of injunctive relief, but rather makes such jurisdictional statement for the entire complaint.  Under <u>Twombly</u>, as discussed above, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' *requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do*."  127 S. Ct. at 1959 (emphasis added). Here, Plaintiff has failed to meet its burden to withstand dismissal for lack of subject matter jurisdiction, founded on diversity.

Separately, after dismissing all claims on which the Court has original jurisdiction (Counts I-V), the Court should decline to exercise supplemental jurisdiction over this pendent state law claim, pursuant to 28 U.S.C. § 1367(c)(3).   The discretionary language of 28 U.S.C. § 1367(c)(3) permits a district court to decline to exercise supplemental jurisdiction over state claims where it has dismissed all claims over which it has original jurisdiction.  See <u>Ehrich v. B.A.T. Indust. P.L.C.</u>, 964 F. Supp. 164, 167 (D.N.J. 1997) (Greenaway, J.) (declining to exercise supplemental jurisdiction over the remaining state law claims, citing <u>Pennsylvania Nurses Ass'n v. Penn. State Educ. Ass'n</u>, 90 F.3d 797, 801 (3rd Cir. 1996)).

### 2.      Failure to State a Claim

Substantively, if the Court agrees that Plaintiff has failed to state a claim on its infringement and dilution counts, then there is no basis for Plaintiff's consumer fraud claim,

---

[21] Complaint at ¶ 2.

{00327324.1}

upon which it is based.  Accordingly, Count VI must be dismissed both for lack of jurisdiction and for failure to state a claim.

## V.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Complaint in its entirety be dismissed.

Dated:  November 7, 2008

ROBINSON, WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400
lwettre@rwmlegal.com

BY:   *s/ Leda Dunn Wettre*
Leda Dunn Wettre

-and-

Stephen J. Zralek, Esq.
Bone McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
(615) 238-6305
szralek@bonelaw.com

*Attorneys for Defendants*
*Aston Asset Management, LLC and Smart*
*Portfolios, LLC*

## CERTIFICATE OF SERVICE

I certify that on November 7, 2008, I caused a copy of the foregoing to be served upon plaintiff's counsel of record via the Court's electronic filing system.

*s/Leda Dunn Wettre*
Leda Dunn Wettre

17

{00327324.1}