# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                          )
HENNION & WALSH, Inc.                     )
                                          )     **No.: 2:08-cv-04262-JAG-MCA**
       Plaintiff,                         )
                                          )
       v.                                 )
                                          )
ASTON ASSET MANAGEMENT, LLC               )
and SMART PORTFOLIOS, LLC,                )
                                          )
       Defendant(s)                       )
_____)

_____

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
_____


**RETURN DATE:** December 15, 2008




                        **CHRISTOPHER J. MCHATTIE, ESQ.**
                        161 Boulevard
                        Mountain Lakes, New Jersey 07046
                        (973)-492-5500
                        Christopher J. McHattie, Esq. (CM 8632)
                        Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………… i

TABLE OF AUTHORITIES ………………………………………………… ii

STATEMENT OF FACTS ………………………………………………... 1

THE APPLICABLE STANDARD ON A MOTION TO DISMISS ………………………… 3

ARGUMENT …………………………………………………………… 5

I. COUNTS I AND II OF THE COMPLAINT MEET THE MINIMUM PLEADING REQUIREMENT FOR A CAUSE OF ACTION UNDER SECTION 32 OF THE LANHAM ACT [15 U.S.C. §1114] ………………………………………………… 5

II. COUNT III OF THE COMPLAINT SETS FORTH A CAUSE OF ACTION UNDER SECTION 43(A) OF THE LANHAM ACT [15 U.S.C. §1125(A)] WITH THE REQUISITE LEVEL OF PARTICULARITY …………………………………………… 11

III. COUNT IV OF THE COMPLAINT SETS FORTH A CAUSE OF ACTION UNDER SECTION 43(C) OF THE LANHAM ACT [15 U.S.C. §1125(C) AND §1127] WITH THE REQUISITE LEVEL OF PARTICULARITY …………………………………... 12

IV. COUNT V OF THE COMPLAINT STATES THE REASONS FOR THE NECESSITY OF CANCELING REGISTRATION NO. 3,286,212 ………………………………… 14

V. PLAINTIFF VOLUNTARILY DISMISSES ITS CONSUMER FRAUD CLAIM …………... 17

VI. SHOULD THIS COURT DETERMINE THAT PLAINTIFF HAS FAILED TO PLEAD ANY CAUSE OF ACTION WITH REQUISITE SPECIFICITY, THERE WOULD BE NO PREJUDICE TO DEFENDANTS IN GRANTING PLAINTIFF LEAVE TO AMEND THE COMPLAINT …... 17

CONCLUSION …………………………………………………………. 18

# TABLE OF AUTHORITIES

## CASES

*A&H SPORTSWEAR, INC. V. VICTORIA'S SECRET STORES, INC.,* 237 F.3D 198 (3RD CIR. 2000) ……………………………………………………………………… 16

*AMERITECH, INC. V. AMERICAN INFORMATION TECHNOLOGIES CORP.,* 811 F.2D 960 (6TH CIR. 1987) …………………………………………………………………... 16

*BELL ATLANTIC CORP. V. TWOMBLY,* 127 S. CT. 1955 (2007) ……………………… 3, 4

*BISHOPS BAY FOUNDERS GROUP, INC. V. BISHOPS BAY APARTMENTS, LLC,* 301 F. SUPP. 2D 901 (W.D. WIS. 2003) …………………………………………………… 9

*BOARD OF REGENTS V. KST ELECTRIC LTD.,* 550 F. SUPP. 2D 657 (W.D. TEX. 2008) . 12

*BOGOSIAN V. GULF OIL CORP.,* 561 F.2D 434 (3D CIR. 1977) ……………………… 3

*CHECKPOINT SYSTEMS, INC. V. CHECK POINT SOFTWARE TECHNOLOGIES, INC.,* NO. 96-3153 (D.N.J. MAY 17, 1999) …………………………………………………… 9, 10

*CITY CHECK CASHING INC. V. NAT'L STATE BANK,* 244 N.J. SUPER. 304 (APP. DIV. 1990) ……………………………………………………………………………….. 17

*COMM. FOR IDAHO'S HIGH DESERT, INC. V. YOST,* 92 F.3D 814 (9TH CIR. 1996) ……. 9

*CONLEY V. GIBSON,* 355 U.S. 41 (1957) ………………………………………… 3, 4

*COOK, PERKISS & LIEHE, INC. V. N. CAL. COLLECTION SERV., INC.,* 911 F.2D 242 (9TH CIR. 1990) ………………………………………………………………….. 17

*CUNNINGHAM V. LASER GOLF CORP.,* 222 F.3D 943 (FED. CIR. 2000) ……………… 15

*EAGLE SNACKS, INC. V. NABISCO BRANDS, INC.,* 625 F. SUPP. 571 (D.N.J. 1985) …… 8

*ELIZABETH TAYLOR COSMETICS CO. V. ANNICK GOUTAL, S.A.R.L.,* 673 F. SUPP. 1238 (S.D.N.Y. 1987) ……………………………………………………………………. 10

*FREEDOM CARD, INC. V JPMORGAN CHASE & CO.,* 432 F.3D 463 (3RD CIR. 2005) …. 5

*GENERAL CIGAR CO. V. G.D.M. INC.,* 988 F. SUPP. 647 (S.D.N.Y. 1997) ………….. 9

*GLENSIDE WEST CORP. V. EXXON CO., U.S.A.,* 761 F. SUPP. 1100 (D.N.J. 1991) …… 3

HERBKO INTERN., INC. V. KAPPA BOOKS, INC., 308 F.3D 1156 (FED. CIR. 2002) …... 16

HISHON V. KING & SPALDING, 467 U.S. 69 (1984) ……………………………… 3

INTERNATIONAL ORDER OF JOB'S DAUGHTERS V. LINDEBURG & CO., 727 F.2D 1087 (FED. CIR. 1984) …………………………………………………………… 15

JONES V. INTELLICHECK, INC., 274 F. SUPP.2D 615 (D.N.J. 2003) ………………… 3

JONES V. WILLIAMS, 2007 U.S. DIST. LEXIS 43129 (D. DEL. 2007) ……………… 4

KRUG VINS FINS DE CHAMPAGNE V. RUTMAN WINE CO., 197 U.S.P.Q. 572 (T.T.A.B. 1977) ……………………………………………………………………… 9

LOUIS VUITTON V. HAUTE DIGGITY DOG, 507 F.3D 252 (4TH CIR. 2007) …………… 6, 7, 10

MICHAELS V. STATE OF N.J., 955 F. SUPP. 315 (D.N.J. 1996) ……………………… 3

MORRIS V. AZZI, 866 F. SUPP. 149 (D.N.J. 1994) ……………………………….. 3

MOSELEY V. SECRET CATALOGUE, INC., 537 U.S. 418 (2003) ……………………… 13,14

PINKER V. ROCHE HOLDINGS LTD., 292 F.3D 361 (3D CIR. 2002) ………………… 3

PRIMA V. DARDEN RESTAURANTS, INC., 78 F. SUPP.2D 337 (D.N.J. 2000) ………….. 4

RANSOM V. MARRAZZO, 848 F.2D 398 (3RD CIR. 1988) ……………………………… 4

SCHEUER V. RHODES, 416 U.S. 232 (1974) ……………………………………… 3

SPECIALTY MEASUREMENTS, INC. V. MEASUREMENT SYSTEMS, INC., 763 F. SUPP. 91 (D.N.J. 1991) ……………………………………………………………….. 8

STAR-KIST FOODS, INC. V. P.J. RHODES & CO., 735 F.2D 346 (9TH CIR. 1984) …….. 16

VIKING YACHT CO. V. COMPOSITES ONE LLC, 496 F. SUPP. 2D 462 (D.N.J. 2007) …. 17

WARTH V. SELDIN, 422 U.S. 490 (1975) ……………………………………… 3

WMS GAMING, INC. V. JESS THORNHILL ENTERPRISES, WL 2469022 (N.D. TEX. 2008) ……………………………………………………………………….. 12

## STATUTES, RULES AND MISC. AUTHORITY

15 U.S.C. §1064 …………………………………………………………………… 9, 14-17

15 U.S.C. §1114 …………………………………………………………………… 5, 6, 16

15 U.S.C. §1125(a) ………………………………………………………………... 11, 12

15 U.S.C. §1125(c) ………………………………………………………………... 10, 12 - 14

FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) …………………………………… 3

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ………………………………….. 3,4

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 4TH ED. §31-157 ……… 9

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 4TH ED. §31-160 ……… 9

THE CURRENT STATE OF ANTIDILUTION LAW: THE TRADEMARK DILUTION REVISION
ACT AND THE IDENTICAL MARK PRESUMPTION, JEREMY M. ROE, 57 DEPAUL L. REV.
571 (WINTER 2008) …………………………………………………………………… 13

## STATEMENT OF FACTS

Plaintiff, Hennion & Walsh, Inc. ("Hennion") is a well recognized financial services company.  Hennion has particular expertise with municipal bonds, offers a full suite of equity and fixed-income products and services and is a pioneer in offering exchange traded funds[1] (ETFs), teaming up with Lipper to provide: SMARTGROWTH® Lipper Optimal Conservative Index fund, SMARTGROWTH® Lipper Optimal Moderate Index fund and SMARTGROWTH® Lipper Optimal Growth Index fund.

As set forth in detail in the Complaint at ¶¶ 15, 16 and 17, the United States Patent and Trademark Office has registered and issued United States Patent and Trademark Office Registration Certificates to Hennion for the trademarks: (i) 10K SMARTTRUST®, U.S. Registration No. 2,518,390; (ii) SMART TRUST®, U.S. Registration No. 2,967,790, and (iii) SMARTGROWTH®, U.S. Registration No. 3,406,240, all in connection with financial services, generally and SMARTGROWTH in connection with, *inter alia*, "creation and distribution of mutual funds."

Because of its particular relevance here, Hennion's SMARTGROWTH® ETFs have been recognized publicly as a leading brand of ETF in the industry, ranking most recently and remarkably in these turbulent times as 11th, 12th and 13th out of 847 mutual funds[2]. This puts the SmartGrowth® brand of funds among the top 2% in performance rankings in each of their respective Lipper classifications. As a point of reference, the S&P 500 experienced a return of -13.12% over the same time period. ***Moreover and specifically relevant here, based upon research to date, there are only 6 fund families that Plaintiff can comfortably classify as true open-end funds of ETFs (i.e. they invest exclusively in other ETFs) in the U.S. Those open-***

---

[1] ETF's, generally, are investment vehicles traded on stock exchanges, much like stocks that seek to track the performance of an index by holding all or a representative sampling of the securities that index.
[2] As of July 17, 2008.

*end funds of ETFs include the Hennion SMARTGROWTH® ETFs, Aston's Smart/Allocation ETF (renamed since Plaintiff's Complaint "Aston/Smart Portfolios Fund"), Seligman, Federated, AdvisorOne, Amerigo and TD Ameritrade.  An extremely small universe and two of the six use Smart in their fund names.*  In terms of Plaintiff's Complaint, at ¶23, Plaintiff avers: "Defendants are not entitled to use of the mark SMART to brand its ETF investment vehicles, neither by virtue of the Registration for SMART PORTFOLIOS LLC and Design, nor by any other means *as such use causes confusion in the marketplace*" (emphasis added).

Defendant introduced the "Aston/Smart Allocation ETF Fund" on or about January 10, 2008.  Since that time, and as set forth in its Complaint at ¶25, *actual confusion* of consumers and industry professionals regarding Hennion's sponsorship and/or relationship with Defendants' fund has occurred.  As set forth in greater detail below, the *sine qua non* of a trademark infringement claim is that "the defendant's use of the mark is likely to cause confusion surrounding the origin of goods or services;" i.e. "a likelihood of confusion."  Not only is a likelihood of confusion "plausible" based upon the factual allegations of the Complaint as required by *Twombly,* it has in fact occurred, an allegation which is also plead.  Paragraphs 15, 16, 17, 23 and 25 adequately plead causes of action for trademark infringement, unfair competition (and their common law corollaries) and for Cancellation of Defendant's federal Trademark Registration.

2

## THE APPLICABLE STANDARD ON A MOTION TO DISMISS

As conceded by Defendants, "Fed.R.Civ.P. 8(a)(2) requires only 'a short and plain statement of the claim showing that a pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Defendants' Brief at page 5 ("*Def. Brief* p.5"), citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007), (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  As further conceded by Defendants, it is well settled that on a Rule 12(b)(6) motion to dismiss, it is incumbent upon the court to accept as true the factual allegations of the pleadings and all reasonable inferences that can be drawn therein, and view those facts and inferences in a light most favorable to the nonmoving party. *Def. Brief* p.6; *See also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002); *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1100, 1107 (D.N.J. 1991).

Although a court is not required to accept bald assertions, (*see Jones v. IntelliCheck, Inc.*, 274 F. Supp.2d 615, 625 (D.N.J. 2003), a plaintiff is not required to set forth all evidence and facts that underlie the claims in the Complaint. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). A Complaint may be dismissed only if ***it is beyond question*** "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, 467 U.S. at 73; *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Conley*, 355 U.S. at 45-46 (a Complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Michaels v. State of N.J.*, 955 F. Supp. 315, 330 (D.N.J. 1996); *Morris v. Azzi*, 866 F. Supp. 149, 152 (D.N.J. 1994)(emphasis added).  As the Supreme Court has instructed, a Complaint should only be dismissed for failure to state a claim where the "plaintiff

can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.  Thus, "a Complaint should not be dismissed unless it appears beyond doubt that 'the facts alleged in the Complaint, even if true, fail to support the claim.'" *Prima v. Darden Restaurants, Inc.*, 78 F. Supp.2d 337, 342 (D.N.J. 2000) (quoting *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988)). As stated by the *Prima* court:

> "A district court reviewing the sufficiency of a Complaint has a limited role. 'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his [or her] claims.'"

*Id.*, 78 F. Supp.2d at 342 (quoting *Scheuer*, 416 U.S at 236).

In the recent *Twombly* decision, the Supreme Court clarified the standard of review for Rule 12(b)(6) Motions to Dismiss (directed specifically to the context of a class action antitrust allegation). Applying *Twombly* as if this were such a class action antitrust allegation, Plaintiffs must merely allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1959; *see*, *Jones v. Williams*, 2007 U.S. Dist. LEXIS 43129 (D. Del. 2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true (even if doubtful in fact).").

When the foregoing standard is applied to Plaintiff's claims, Plaintiff submits that it is entitled to the relief requested and that Defendants' Motion to Dismiss should be denied.

# ARGUMENT

I.  **Counts I and II Of The Complaint Meets The Minimum Pleading Requirement For A Cause Of Action Under Section 32 Of The Lanham Act [15 U.S.C. §1114]**

Defendants assert that Hennion has failed to state a cause of action under Section 32 of the Lanham Act [15 U.S.C. §1114], because Defendants assert that Hennion "has averred no set of facts on which to base its infringement and unfair competition claims." *Def. Brief* p.13. Specifically, Defendants believe mistakenly that, since Hennion has not registered nor used the mark SMART by itself, nor registered the mark it accuses Defendant of using, namely, ASTON'S SMART/ALLOCATION ETF FUND and now ASTON/SMART PORTFOLIOS FUND, Hennion may not base a claim for infringement or unfair competition upon that allegation.

To prove either trademark infringement or unfair competition, in violation of the Lanham Act, a plaintiff must show that:

> (1) the mark is valid and legally protectable;
> (2) the mark is owned by the plaintiff; and
> (3) that the defendant's use of the mark is likely to cause confusion surrounding the origin of goods or services.

*Freedom Card, Inc. v JPMorgan Chase & Co.*, 432 F.3d 463, 469-70 (3d Cir. 2005).  Defendant identified this same legal standard, emphasizing "the mark," and further asserting, "the 'law of trademark protects trademark owners in the exclusive use of *their* marks…'." *Def. Brief* p. 12 *citing Freedom Card, Inc.*, 432 F.3d at 469. (emphasis supplied by Defendant).[3] Defendants wholly ignore, at best, the "likelihood of confusion standard" at the base of all trademark infringement actions.

---

[3] Defendant mischaracterizes the law regarding trademark use.  Marks need not be identical to be infringing.

While the Defendants cite to the correct statute, namely, Section 32 of the Lanham Act, and to the correct provision thereof:

> **(1)** Any person who shall, without the consent of the registrant—
> **(a)** use in commerce ***any reproduction, counterfeit, copy, or colorable imitation*** of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is ***likely to cause confusion, or to cause mistake, or to deceive***…

15 U.S.C. § 1114(1), they proceed to completely re-write the law by arguing that the exact mark must be used in order for there to be a valid claim.  That argument wholly ignores and tortures the actual language of the statute and the considerable case law developed thereon.  In fact, any trademark owner is permitted to file a Complaint against any user of any term (whether similar on its face or not, for example, a foreign equivalent would look totally different) so long as the allegedly infringing mark in issue is a "***reproduction, counterfeit, copy, or colorable imitation*** of a registered mark" and that the complained of use is "***likely to cause confusion, or to cause mistake, or to deceive***."

On a Motion to Dismiss, the question is: has plaintiff made out a prima facie case on all of the elements of its claim.  Here, Hennion needs to demonstrate that it owns valid and legally protectable marks, which standard is averred at ¶¶ 15, 16 and 17, and as conceded by Defendants, is presumptively satisfied by Plaintiff's federal Registrations, and that the Defendants are using a mark, any mark, which is *likely to cause confusion, or to cause mistake, or to deceive.* That standard is satisfied by the allegations of Plaintiff's Complaint at ¶¶ 21 through 26.  Here, in fact, not only has Plaintiff averred that confusion is likely, it has averred at ¶ 25 of its Complaint that actual confusion has occurred.  As set forth in *Louis Vuitton v. Haute Diggity Dog,* actual confusion is persuasive evidence of the likelihood of continued confusion. 507 F.3d 252**,** 263 (4th Cir. 2007).

6

**<u>Defendants' Extraneous Infringement Arguments</u>**

The Defendants next pursue a series of extraneous arguments, which, while not actually relevant on a Motion to Dismiss, require a response.

These extraneous arguments are not directed at the pleadings at all, but Plaintiff's likelihood of success on the merits.  While the Court is permitted to examine "documents attached to or specifically referenced in the Complaint, and matters of public record" as argued by the Defendants, and Plaintiffs "cannot prevent a court from looking at the texts of the documents on which its claim is based," the Defendants here have attached a voluminous amount of materials not even remotely relevant to the matter at hand, despite the Defendants' desire for them to bear relevance here.

Defendants argue that third party uses undermine Plaintiff's rights.  If that were true, Plaintiffs would never be able to pursue multiple infringers as each infringer would point to the other and say: "hey, you can't sue me, what about them?"  By way of chronology:

| Name/Domain | Date | Goods/Services/Notes |
|---|---|---|
| Smart Funds | 05/01/97 | Mutual fund management services for pension fund programs |
| Smart Funds | 05/01/97 | Mutual fund and collective investment fund management |
| **10K Smarttrust (Hennion)** | **10/28/99** | INVESTMENT FUND SERVICES |
| **Smart Trust (Hennion)** | **05/12/03** | Financial services, namely, commodity brokerage, estate trust management and investment brokerage services, namely creation and distribution of Municipal Bonds, Corporate Bonds, Mortgage-Backed Securities, Unit Investment Trusts, Bond Swaps, Mutual Funds, Research, Stocks, Options, IRAs, Pension and Profit Sharing Plans |
| Asset labs **(predecessor to Smart Portfolios, LLC)** changes name to Smart Portfolio | 01/01/05 | |

| | | |
|---|---|---|
| **Smart Portfolios LLC** | 04/06/05 | Financial services, namely, investing the funds of others, mutual fund investment and investment advisory services |
| **SmartGrowth** | 02/16/07 | Financial investment services, namely, mutual fund investment services; financial investment in the field of securities; Investment management and consultation services; investment brokerage services, namely, creation and distribution of mutual funds |
| Lipper Smartgrowth ETF | 6/1/2007 | Inception of Hennion SMARTGROWTH ETF |
| Aston/Smart Allocation Fund | 01/10/08 | Inception of Aston/Smart for trading |
| Investors Business Daily article | 05/09/08 | Confusion comparing Aston/Smart w/Hennion's products |

As set forth in *Specialty Measurements, Inc. v. Measurement Systems, Inc.*,

Defendants finally argue that plaintiff's failure to assert that its rights are superior to those of [an] alleged third party user precludes the relief which plaintiff seeks. Plaintiff correctly observes that this argument is merely an attempt by the defendant to raise the *jus tertii* defense. *Jus tertii*, or raising the rights of third parties, should not be allowed as a defense in any trademark case. Citing *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 583 (D.N.J. 1985). 763 F. Supp. 91, 94-95 (D.N.J. 1991).

What in essence Defendants argue is that "[s]omebody has a right to sue me, but it's not you." 6 MCCARTHY § 31:157 (internal marks omitted). Modern courts and the Trademark Board have rejected the *jus tertii* defense. *Id.* § 31:160; *see Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996) ("[A] third party's prior use of a trademark is not a defense in an infringement action."); *Bishops Bay Founders Group, Inc. v. Bishops Bay Apartments, LLC*, 301 F. Supp. 2d 901 (W.D. Wis. 2003) (holding that whether a third party might have trademark rights superior to plaintiff "has no effect on this lawsuit"); *General Cigar Co. v. G.D.M. Inc.*, 988 F. Supp. 647, (S.D.N.Y. 1997) (holding that a third party's possibly superior rights cannot be a defense); *Krug Vins Fins de Champagne v. Rutman Wine Co.*, 197 U.S.P.Q. 572, 574 (T.T.A.B. 1977) ("The fact that the third persons might possess some rights in

8

their respective marks which they could possibly assert against petitioner in a proper proceeding can avail respondent nothing herein since respondent is not in privity with nor is the successor in interest to any rights which such persons have acquired in their marks.").

While third party use can be relevant with respect to strength of a mark, its does not go the substantive question of whether Plaintiff is entitled to relief at all, it merely goes to the magnitude of relief that may or may not be available.

Defendants' next argue based on the same premise that the USPTO's registration of other marks including the term Smart in connection with financial services for two unrelated entities supports the proposition that Hennion "has no exclusive right to the mark SMART." It should be no surprise to the Court that our government, specifically the USPTO, occasionally makes mistakes and registers somewhat similar marks and leaves it to a party with superior rights to "oppose" or "cancel" the Registration if it believes it will be damaged, as Plaintiff is doing here vis-à-vis Defendant Smart Portfolio's Registration. (15 USC §1064. Cancelation of Registration. A petition to cancel a registration of a mark, stating the grounds relied upon, may . . . be filed . . . by any person who believes that he is or will be damaged, including as a result of dilution under section 43(c) [**15 USC 1125(c)**], by the registration of a mark on the principal register. . ) In fact, all but the Hand Benefits & Trust, Inc. registration of SMART FUNDS[4] are junior users to Plaintiff and all, including these Defendants, can be considered infringers and their registration subject to a cancellation should Plaintiff conclude that it is or will be damaged by continued registration.

As set forth in *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, No. 96-3153 (D.N.J. 05/17/1999):

9

Checkpoint is not obligated to deal with all infringers at the same time, and Checkpoint has been diligent in asserting its rights in the "CHECKPOINT" mark and name to prevent registration of marks confusingly similar to "CHECKPOINT" in the corporate security field. *Elizabeth Taylor Cosmetics Co. v Annick Goutal, S.A.R.L.*, 673 F. Supp. 1238, 1248 (S.D.N.Y. 1987).

In the relatively short period of time since these Defendants began using their Aston/Smart Allocation ETF mark,[5] knowledgeable industry professionals were confused as to the source of Defendant's ETFs and this confusion continues to occur.  As noted above, actual confusion is persuasive evidence of the likelihood of continued confusion  (see *Louis Vuitton*, at 263) and it is also a great encourager of legal action as confusion serves no one's best interests.

Plaintiff submits that it has more than met its burden for pleading a cause of action under Section 32 of the Lanham Act.  Contrary to Defendants' characterization of the allegations within the Complaint, ¶¶ 15, 16, 17, 18, 22, 25, 32 and 33 of the Complaint, set forth a straightforward and sufficiently detailed description of the causes of action asserted – Plaintiff maintains Federal Registrations for its SMARTGROWTH, SMART TRUST and 10K SMARTTRUST marks and markets ETFs in connection with the SMARTGROWTH mark, SMART being the dominant portion thereof; Defendants created their own version of "SMART" ETFs using a colorable imitation and confusingly similar set of marks, namely ASTON/SMART ALLOCATION ETF FUND, ASTON/SMART PORTFOLIOS FUND and SMART PORTFOLIOS; these infringing uses were in interstate commerce; Plaintiff's business was damaged as a result; and Plaintiff's damages were proximately caused by the Defendants' activities. Defendants' Motion to Dismiss Counts I and II should be denied.

---

[5] Defendant began marketing its ASTON/SMART ALLOCATION ETF FUND on January 10, 2008 and instances of actual confusion began at industry tradeshows shortly thereafter.

## II.   COUNT III OF THE COMPLAINT SETS FORTH A CAUSE OF ACTION UNDER SECTION 43(A) OF THE LANHAM ACT [15 U.S.C. §1125(A)] WITH THE REQUISITE LEVEL OF PARTICULARITY

Defendants assert that Plaintiff has failed to state a cause of action under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), arguing that Count III is analyzed in the same way as Counts I and II above.  While the analysis is similar, this statement of the law is not accurate.

Under 15 U.S.C. §1125(a)(1)(A), a plaintiff must allege:

> (1) that the defendant used any word, term, name, symbol, or device, or any combination thereof, or any false representation of             fact;
> (2) that such use occurred in interstate commerce with goods or services;
> (3) that such use likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of goods and services by another person; and
> (4) that the plaintiff has been or is likely to be damaged.

Here, Hennion has alleged that Defendant's use the term SMART (a word or term or name or symbol or device) *Complaint* ¶¶41, 43, in connection with its sale of financial services and investment funds in interstate commerce (use in interstate commerce with goods or services) *Complaint* ¶45, has caused actual confusion and is likely to continue to do so (satisfying prong three) *Complaint* ¶43, and that damage has occurred and will continue if not enjoined (satisfying prong four).  *Complaint* ¶46.

Plaintiff submits that it has met its burden for pleading a cause of action under Section 43(a) of the Lanham Act contrary to Defendants' contention.  Given that the Complaint adequately addresses each of the requirements for pleading a cause of action under 15 U.S.C.A. §1125(a), Defendants' Motion to Dismiss Count III should be denied.

III.   **COUNT IV OF THE COMPLAINT SETS FORTH A CAUSE OF ACTION UNDER SECTION 43(C) OF THE LANHAM ACT [15 U.S.C. §1125(C) and § 1127] WITH THE REQUISITE LEVEL OF PARTICULARITY**

To state a trademark dilution claim under the Trademark Dilution Revision Act

("TDRA"), a plaintiff must show:

> (1) that the plaintiff owns a famous mark that is distinctive;
> (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark;
> (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and
> (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark. *15 U.S.C. §1125(c).*

Defendant's sole contention on Count IV is that none of Plaintiff's marks are famous

within the meaning of the TDRA.   Under the Lanham Act, four non-exclusive factors are

relevant when determining whether a mark is sufficiently famous:

> (1) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;
> (2) The amount, volume, and geographic extent of sales of goods or services offered under the mark;
> (3) The extent of actual recognition of the mark;
> (4) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

The court in *WMS Gaming, Inc. v. Jess Thornhill Enterprises*, WL 2469022 (N. D. Tex.

2008), recognizing the decision in *Board of Regents v. KST Electric Ltd.*, 550 F. Supp. 2d 657

(W.D. Tex. 2008) (cited by Defendant as the authority that Hennion's marks are not famous),

reasoned, "WMS is likely to prevail in demonstrating each of these factors. Its marks are

registered. Its marks are used in gaming establishments through the United States and have

become known as some of the highest quality gaming equipment *in the industry*. Moreover,

consumers that play the gaming machines have come to recognize WMS games and seek out

those games when frequenting a gaming establishment. Thus, WMS can establish its marks are famous"(emphasis added).

As set forth in THE CURRENT STATE OF ANTIDILUTION LAW: THE TRADEMARK DILUTION REVISION ACT AND THE IDENTICAL MARK PRESUMPTION, *DEPAUL LAW REVIEW,* Vol. 57:571, 585:

> The appropriate standard of fame is one of the greatest sources of controversy in federal dilution law.[6] The FTDA did not clearly state the appropriate standard for fame, leading several courts to apply a niche market approach.[7] Considerations of the geographic extent of the trading area, channels of trade, and degree of recognition in the trading areas and channels supported a niche market standard.[8] The *Moseley* Court failed to analyze the appropriate fame standard for the VICTORIA'S SECRET mark, because the parties conceded that the mark was sufficiently famous.[9] This ambiguity sparked extensive academic debate regarding the appropriate fame standard.[10] The TDRA formally adopted the position that a famous mark must be sufficiently famous to the general public, rather than a niche market.[11] It provides that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source."[12] The TDRA also consolidated the eight FTDA fame factors into four factors: (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties. (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark. (iii) The extent of actual recognition of the mark. (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.[13] Congress created the four-factor analysis to strongly discourage use of the niche fame standard.[14] Congress removed the factors that supported the niche fame standard and eliminated the inherent or acquired distinctiveness factor.[15]

Thus, while Defendants are correct in noting that Congress wished to discourage "niche fame," it did not eliminate it and Plaintiff has a right to prove out its adequately plead claim.

---

[6] S. REP. NO. 100-515, at 7 (1988) ("The provision is specifically intended to address a narrow category of famous registered trademarks where the unauthorized use by others, on dissimilar products for which the trademark is not registered, dilutes the distinctiveness of the famous work.")

[7] *See supra* notes 53–63 and accompanying text.

[8] 15 U.S.C. § 1125(c)(1) (2000) (amended 2006).

[9] Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 419 (2003).

[10] *See, e.g.,* Belongia, *supra* note 63.

[11] 15 U.S.C. § 1125(c)(2) (Supp. 2007).

[12] § 1125(c)(2)(A) (emphasis added).

[13] § 1125(c)(2).

[14] H.R. REP. NO. 109-23, at 25 (2005).

[15] *See* 15 U.S.C. § 1125(c)(2)(A) (Supp. 2007).

Here, Hennion's marks are registered and used in interstate commerce throughout the United States. While Defendant alleges that Hennion's statement that it has "enjoyed substantial unsolicited publicity for its Hennion SMART funds *in the industry*…" (emphasis supplied by Defendant) would suggest a conclusion of "not famous," it would seem the *WMS Gaming* court would disagree, particularly given that the "industry" is a national one, and not one of regional or state specific import. Moreover, Hennion has alleged widespread recognition, including unsolicited publicity, which satisfies the conditions above.

Plaintiff submits that it has met its burden for pleading a cause of action under Section 43(c) of the Lanham Act contrary to Defendants' contention. Given that the Complaint adequately addresses each of the requirements for pleading a cause of action under 15 U.S.C.A. §1125(c), Defendants' Motion to Dismiss this count should be denied.

## IV.    COUNT V OF THE COMPLAINT STATES THE REASONS FOR THE NECESSITY OF CANCELING REGISTRATION NO. 3,286,212

As noted above, 15 USC §1064 provides that "[a] petition to cancel a registration of a mark, stating the grounds relied upon, may . . . be filed . . . by any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register. . ) Here, Defendant SMART PORTFOLIOS LLC registered the mark SMART PORTFOLIOS LLC and design in connection with "financial services, namely, investing the funds of others, mutual fund investment and investment advisory services." If this mark were to remain on the federal register, it would constitute *prima facie* evidence of Defendant's right to use the mark, a right that is in clear derogation of Plaintiff's right to use its prior and superior marks.

Defendants' sole argument again is that its use of ASTON/SMART ALLOCATION ETF FUND does not lead to Plaintiff being harmed by continued Registration of SMART PORTFOLIOS LLC and design. First, that is irrelevant to whether Plaintiff has adequately pled

a cause of action pursuant to 15 USC §1064 to cancel SMART PORTFOLIOS LLC and design Registration.  The only question is whether Plaintiff will be damaged by continued registration of the SMART PORTFOLIOS LLC and design Registration.  That has been more than adequately pled.

According to Defendants' Brief, Plaintiff's Count V survives dismissal if Plaintiff's Complaint avers superior rights in Defendants' registered mark (*Def. Brief* p. 14).  Plaintiff has averred such superior rights via its prior 10K SMARTTRUST®, U.S. Registration No. 2,518,390, SMART TRUST®, U.S. Registration No. 2,967,790, and SMARTGROWTH®, U.S. Registration No. 3,406,240 and the confusion that is likely should the Registration not be cancelled and Defendant Smart Portfolios continue to use the mark.

Nevertheless, the test to determine if a Cancellation cause of action has been adequately pled is: "a petitioner must show both standing and valid grounds for cancellation." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). "Standing is the more liberal of the two elements and requires only that a party believe that it is likely to be damaged by the registration." *Cunningham*, 222 F.3d at 945.  A belief that damage is likely can be shown by a pecuniary interest. *Id*.  Showing actual damages is not necessary; "[t]he Lanham Act requires only that the cancellation petitioner plead and prove facts showing a real interest in the proceeding in order to establish standing." *Star-kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984) (citing *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092 (Fed. Cir. 1984)).

With respect to a valid ground for cancellation, 15 USC §1064 provides:

> A petition to cancel a registration of a mark, stating the grounds relied upon, may . . be filed . . . by any person who believes that he is or will be damaged . .

Plaintiff has effectively pled three independent bases as valid grounds for cancellation: (1) by virtue of the integration sentence ¶54 of Count V, confusion in violation of Section 32 Of The Lanham Act [15 U.S.C. §1114][16] as directed to Defendant Smart Portfolio's use and Registration of the SMART component as used in connection with investment fund and advisory services; (2) ¶55 that Defendant's Registration constitutes *prima facie* evidence of Defendants' exclusive right to use the term SMART PORTFOLIO LLC, a right to which Defendant is not entitled based upon Plaintiff's prior rights in its SMART family of marks; and (3) Defendant's Registration interferes with and deprives Plaintiff of the liberty to use its SMARTGROWTH®, SMARTTRUST and 10KSMARTTRUST or similar terms in connection with its goods and services, by virtue of a "reverse confusion" i.e. consumer see ® symbol associated with Defendant's mark and perceive Plaintiff's marks as the infringer or interloper.  As set forth in *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 211 (3d Cir. 2000):

> "Reverse confusion occurs when a . . . company uses the trademark of a . . . senior owner and thereby causes likely confusion as to the source of the senior user's goods or services." Id. The result of reverse confusion, which is similar to dilution, "is that the senior user loses the value of the trademark its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." Id. at 474-75 (quoting Ameritech, Inc. v. American Information Technologies Corp., 811 F.2d 960, 964 (6th Cir. 1987))

Plaintiff submits that it has met its burden for pleading a cause of action pursuant to 15 USC §1064 contrary to Defendants' contention.  Given that the Complaint adequately addresses each of the requirements for pleading a cause of action under 15 USC §1064, Defendants' Motion to Dismiss this count should be denied.

---

[16]One valid ground for cancellation is section 2(d) of the Lanham Act, which precludes registration when a mark is likely to cause confusion with a mark or trade name previously used or registered by another. 15 U.S.C. § 1052(d) (2000); *Herbko Intern., Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 (Fed. Cir. 2002) Cunningham, 222 F.3d at 946. Hence, a party petitioning for cancellation under section 2(d) must show that it had priority and that registration of the mark creates a likelihood of confusion.

## V.        PLAINTIFF VOLUNTARILY DISMISSES ITS  CONSUMER FRAUD CLAIM

Despite Defendants' "off the mark" arguments for dismissal of Plaintiff's consumer fraud count, Plaintiff nevertheless voluntarily dismisses Count VI of the Complaint as not in accord with *City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304, 309 (App. Div. 1990) (internal quotation marks omitted). See also *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 474 (D.N.J. 2007).

## VI.       SHOULD THIS COURT DETERMINE THAT PLAINTIFF HAS FAILED TO PLEAD ANY CAUSE OF ACTION WITH REQUISITE SPECIFICITY, THERE WOULD BE NO PREJUDICE TO DEFENDANTS IN GRANTING PLAINTIFF LEAVE TO AMEND THE COMPLAINT

While Plaintiff believes that the Complaint has been pleaded with sufficient specificity throughout, any technical pleading deficiencies can be cured by granting Plaintiff leave to amend its pleadings to include the specific information that Defendants have alleged to be missing from the Complaint. "When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-247 (9th Cir. 1990). In the instant proceeding, such an amendment would be far from futile, given that the alleged failures in Plaintiff's Complaint pointed out by Defendants in their request for dismissal could be easily addressed through the filing of an amended Complaint.

# CONCLUSION

For all of the foregoing reasons, plaintiff respectfully requests that this Court deny defendants' motion to dismiss, or in the alternative, grant plaintiff leave to file an amended Complaint.

Dated: December 1, 2008

**CHRISTOPHER J. MCHATTIE, ESQ.**
161 Boulevard
Mountain Lakes, New Jersey 07046
(973)-492-5500
Christopher J. McHattie, Esq. (CM 8632)
Attorney for Plaintiff

*Christopher J. McHattie* /s/

CHRISTOPHER J. MCHATTIE, ESQ.

CERTIFICATE OF SERVICE

I certify that on December 1, 2008, I caused a copy of the foregoing to be served upon Defendants' counsel of record via the Court's electronic filing system.

*Christopher J. McHattie* /s/

CHRISTOPHER J. MCHATTIE, ESQ.