**Leda Dunn Wettre, Esq.**
**ROBINSON, WETTRE & MILLER LLC**
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400 (tel)
lwettre@rwmlegal.com

and

**Stephen J. Zralek, Esq.**
**BONE McALLESTER NORTON PLLC**
Nashville City Center
511 Union Street, Suite 1600
Nashville, Tennessee 37219
(615) 238-6300 (tel)
szralek@bonelaw.com
Attorneys for Defendants Aston Asset Management, LLC
and Smart Portfolios, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HENNION & WALSH, INC.** | |
| Plaintiff, | Civil Action No.: 2:08-cv-04262 (JAG) |
| v. | |
| **ASTON ASSET MANAGEMENT, LLC** and **SMART PORTFOLIOS, LLC,** collectively and individually, | |
| Defendants. | |

**REPLY BRIEF IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

RETURN DATE: December 15, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I. Introduction ........................................................................................................................ 1

II. Dismissal is Appropriate When No Confusing Similarity Exists Between Two Marks ........... 2

III. The Marks in the Present Case are Not Confusingly Similar ................................................... 5

    A. Appearance ........................................................................................................................ 6
    B. Sound ................................................................................................................................. 7
    C. Commercial Impression ..................................................................................................... 7
    D. Connotation ........................................................................................................................ 8

IV. Since the Marks are Dissimilar, All Plaintiff's Claims Must Fail as a Matter of Law ............ 9

V. Plaintiff Concedes its Fame, if Any, is Niche Fame, Which is Insufficient to Establish a Dilution Claim under the TDRA, as a Matter of Law .................................................................. 10

VI. Dismissal Should Be *With Prejudice* Since Any Amendment to the Complaint Would be Futile ............................................................................................................................................ 11

VII. Conclusion ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

American Cyanamid Co. v. Nutraceutical Corp., 54 F. Supp. 2d 379 (D.N.J. 1999) ............................................................................................................................... 2, 3, 4, 5, 6, 7, 8,9

Bell Labs., Inc. v. Colonial Prods., Inc., 644 F. Supp. 542 (S.D. Fla. 1986) .................................. 7

Champagne Louis Roederer, S.A. v. Delicato Vineyards, 148 F.3d 1373 (Fed. Cir. 1998) ........... 7

Gooden v. Township of Monroe, No. Civ. 05-2472 (RBK), 2006 WL 591916 (D.N.J. Mar. 7, 2006) ........................................................................................................................ 6

Gruner + Jahr USA Pub'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993) ............................... 7

Hershey Foods Corp. v. Cerreta, 195 USPQ 246 (TTAB 1977) ..................................................... 6

In re Bioneurix Corp., 2006 WL 802403 (TTAB 2006) .................................................................. 8

International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996) ............................................................................................. 8

Interpace Corp. v. Lapp, 721 F.2d 460 (3d Cir. 1983) .............................................................. 3, 6

Jet, Inc. v. Sewage Aeration Sys., 165 F.3d 419 (6th Cir. 1999) ..................................................... 7

Kellogg Co. v. Pack'em Enterprises, Inc., 951 F.2d 330 (Fed. Cir. 1991) ..................................... 6

Marriott Corp. v. Ramada Inc., 826 F. Supp. 726 (S.D.N.Y. 1993) ............................................... 2

Miller Brewing Co. v. Premier Beverages, Inc., 210 USPQ 43 (TTAB 1981) ............................... 6

O'Keefe v. Ogilvy & Mather Worldwide, Inc., slip op., No. 06 Civ. 6278 (S.D.N.Y. Apr. 12, 2007) ..................................................................................................................... 2, 4

Parker v. Google, Inc., 242 Fed. Appx. 833, 2007 WL 1989660 (3d Cir. July 10, 2007) ............ 11

Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548 (3d Cir. 2002) .................................... 6

Ringling Bros-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev't., 170 F.3d 449 (4th Cir. 1999) .................................................................................................................. 9

Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd., 393 F.3d 1238 (Fed. Cir. 2004) ....................................... 7

Smith v. Ames Dept. Stores, Inc., 988 F. Supp. 827 (D.N.J. 1997) ........................................... 3, 5

University of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co, Inc., 703 F.2d 1372 (Fed. Cir. 1983) ..................................................................................................................................... 5

Winer Family Trust v. Queen, 503 F.3d 319 (3d Cir. 2007) ........................................................ 11

**Other Authorities**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31:157 .................... 9

Note, The Current State of Anitdilution Law: The Trademark Dilution Revision Act and the Identical Mark Presumption, 57 DePaul L. Rev. 571 (2008) .................................................... 10

I.      **Introduction**

The Complaint alleges that Defendants use the following term in connection with ETF investment vehicles:

ASTON/SMART ALLOCATION ETF FUND[1]

The Complaint also acknowledges that Defendant Smart Portfolios, LLC's has registered the following design mark on the Principal Register:

 [2]

The threshold issue in deciding Defendants' Motion to Dismiss is whether the above two marks of Defendants are *confusingly similar* to the three marks that Plaintiff has registered:

SMARTGROWTH
SMART TRUST
10K SMARTTRUST[3]

Defendants submit that the answer is overwhelmingly NO.  The best that Plaintiff can do is allege that its marks and Defendants' marks are similar because they share the word "Smart." And what they share – "Smart" – is shared by over more than 30 other marks on the Principal Register in Class 36 (financial services).[4]  The fact that the marks may share a similar term, by itself, does not make them *confusingly* similar.

As a matter of law, this Court should decide that Plaintiff's three marks and Defendants' two marks are *not* confusingly similar.  Without "confusing similarity" among Plaintiff's and

---

[1] Complaint at ¶¶ 22-23.
[2] Id. at ¶¶ 21, 23.
[3] Id. at ¶ 11.
[4] In their Memorandum in Support of the Motion to Dismiss, Defendants highlighted six such marks.  See Doc. 11-2 at notes 1 and 16, and accompanying text.  In Section III(D), infra, Defendants address over 30 other such marks.

1

Defendants' marks, none of the remaining counts can survive dismissal, since all hinge on a threshold finding of confusing similarity.[5]

## II. Dismissal is Appropriate When No Confusing Similarity Exists Between Two Marks

It is appropriate to dismiss a trademark case as a matter of law where the differences between the parties' marks are obvious. See American Cyanamid Co. v. Nutraceutical Corp., 54 F. Supp. 2d 379, 383 (D.N.J. 1999) (dismissing, as a matter of law, plaintiff's claims of trademark infringement, unfair competition and dilution on summary judgment where the court held as a matter of law that the marks were not confusingly similar); O'Keefe v. Ogilvy & Mather Worldwide, Inc., No. 06 Civ. 6278 (SHS), slip op. at 1 (S.D.N.Y. Apr. 12, 2007) (copy attached to Second Kruse Dec. as Ex. C) (granting motion to dismiss in trademark infringement and unfair competition claims that creator of "My Card, My Work" creator brought against creators of American Express mark "MY LIFE. MY CARD")[6]; Marriott Corp. v. Ramada Inc., 826 F. Supp. 726, 727-28 (S.D.N.Y. 1993) (granting motion to dismiss trademark infringement claim where Marriott sued other hotel chain for using the following mark "WHY THE MARRIOTTS STAY AT THE RENAISSANCE," where court found no confusing similarity).

In American Cyanamid the maker of Centrum vitamins asserted claims of trademark infringement and dilution, as well as unfair competition, against the maker of Solaray and Kal vitamins. Id. Both parties' marks employ a rainbow of various colors on their vitamin labels: the plaintiff's has 13 adjacent colors, and the defendant's two labels have five colors. Id. at 382-83. The court concluded that the marks in question were on competing goods: both parties' vitamins are sold in many of the same stores. Id. at 383.

---

[5] Plaintiff voluntarily dismissed Count VI (consumer fraud). See Plaintiff's Response to the Motion to Dismiss (Doc. 16), at p. 22 of 23.
[6] See also O'Keefe v. Ogilvy & Mather Worldwide, Inc., __ F. Supp. 2d __, 2008 WL 5101156 (S.D.N.Y. Dec. 4, 2008), for additional information pertaining to the Order of Dismissal referenced above.

2

While "likelihood of confusion" is typically a question of fact for the jury, "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determinations whether there is a likelihood of confusion as to source." Id. at 384. "Accordingly, courts in [the Third] Circuit have not been hesitant to grant summary judgment where no reasonable juror could find that a likelihood of confusion existed." Id. *Plaintiff demanded no jury in the present case,* making the Court the ultimate decider of this issue.

The defendant in American Cyanamid argued that dismissal of the plaintiff's claims was appropriate because the parties' marks were not "confusingly similar," as a matter of law. Id. at 385. The court agreed. Id. at 390. Finding that the parties were in competition with each other, id. at 386, the court explained that the appropriate examination within the Third Circuit focused only on the marks themselves, and did not apply the common 10-factor test. Id. at 385 (quoting Interpace Corp. v. Lapp, 721 F.2d 460, 462 (3d Cir. 1983) ("[w]here the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself.")).

In reaching the conclusion that the marks were not confusingly similar, the court noted the appropriate test is to compare the marks' overall "*appearance, sound and meaning*." Id. at 387 (emphasis added); see also Smith v. Ames Dept. Stores, Inc., 988 F. Supp. 827, 840 (D.N.J. 1997) (explaining that "the court must compare the appearance, sounds and meaning of the marks, as well as the manner in which they are used."). "[A]t bottom, the similarity of appearance test is really *nothing more than a subjective 'eyeball' test*." Id. (quotations and citations omitted) (emphasis added).

In jury cases, the court "is authorized by law in a summary judgment context to require a minimum of similarity between the marks before it will impound a jury to pass upon the issue of

3

whether a likelihood of confusion exists." American Cyanamid, 54 F. Supp. 2d at 387-88. Where the plaintiff has not demanded a jury, as in the present case, the court is even better positioned to make such determination. Such determination may be made on a motion to dismiss, as well. See e.g., O'Keefe, No. 06 Civ. 6278 (SHS), slip op. at 1, and Marriott, 826 F. Supp. at 727-28.

In applying the "eyeball test" to the parties' competing marks, the American Cyanamid Court concluded that defendant's marks "cannot reasonably be considered to convey the same overall impression as plaintiff's Centrum trademark. The marks are simply too dissimilar to meet even the minimum threshold of similarity that would require the issue of likelihood of confusion to go to a jury." Id. at 388. Although the defendant used five of the thirteen colors on Plaintiff's label, the court rejected the plaintiff's claim of an exclusive right to use the colors as "somewhat akin to claiming the right to sole ownership of five letters in the alphabet." Id. This argument is the same as Hennion & Walsh arguing that it owns the exclusive right to use the word "Smart."

In examining the appearance factor, the American Cyanamid Court noted several differences between the marks that are "so obvious to the naked eye." Id. The plaintiff incorporates 13 narrow adjacent upright colored rectangles aligned horizontally. Id. The Solaray label uses five long colored striped placed on top of each other as stripes in a flag. Id. The plaintiff's mark incorporates gradation of hue, whereas the defendant's do not. Id. After evaluating these factors among others, the court held that "the appearance of the marks is dispositive of the issue." Id. at 389. As such, the court did not examine the sound or meaning of the marks.

In examining the overall impression of the marks, the American Cyanamid Court criticized the plaintiff for focusing on the rainbow common to both parties' marks and for

4

ignoring the fact that the defendant superimposed its own product name on top of the rainbow. Id. at 389. "Thus, even if all the marks could be found to convey some impression of rainbows, there is no connection in the mind between these rainbows or their corresponding products."

> "Likelihood . . . to cause confusion" means more than the likelihood that the public will recall a famous mark on seeing the same mark used by another. It must also be established that there is a reasonable basis for the public to attribute the particular product or service of another to the source of the goods or services associated with the famous mark. To hold otherwise would result in recognizing a right in gross, which is contrary to principles of trademark law.

Id. at 390 (quoting University of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co, Inc., 703 F.2d 1372, 1374 (Fed. Cir. 1983)). The American Cyanamid Court noted that the above point "is even more forceful here, where the marks are clearly not identical and the Court has found them so dissimilar as to be incapable of causing a likelihood of confusion."

Similarly, in Smith v. Ames Dept. Stores, Inc., the court conducted its own examination of the marks and held that they were "highly dissimilar." 988 F. Supp. 827, 840 (D.N.J. 1997). There the plaintiff, who owned the registered mark BIG GUY/LITTLE MAN, asserted claims of trademark infringement against the defendant, which used the marks BIG GUYS and ONE FOR THE BIG GUY. Id. It noted that the defendant's "one for the big guy" was always in smaller-case letters, which was different from the plaintiff's block capital letters in "BIG GUY/little man." Id. The plaintiff's mark incorporated a design/logo, whereas the defendant's mark incorporated no design. Id. As such, "no reasonable fact finder could find a likelihood of confusion" between the marks. Id.

### III. The Marks in the Present Case are Not Confusingly Similar

As conclusively shown below, the dissimilarity of the marks in their entireties as to appearance, sound, commercial impression and connotation is, by itself, dispositive of this case. Since the Complaint avers that the parties use their marks to sell competing goods, the only

5

relevant test is whether the marks are confusingly similar.  E.g., American Cyanamid, 54 F. Supp. 2d at 385 (quoting Lapp, 721 F.2d at 462).  The other nine factors developed in Lapp are irrelevant to the present analysis since they apply only in cases of noncompeting goods.[7]  Id.  Plaintiff's Complaint should be dismissed for failure to state a claim as a matter of law.

### A.   Appearance

Plaintiff's Complaint fails at the outset because the marks at issue are patently dissimilar.  Indeed, the only shared word is SMART.  Additionally, the marks, in their entireties, are clearly dissimilar in appearance.  See Kellogg Co. v. Pack'em Enterprises, Inc., 951 F.2d 330 (Fed. Cir. 1991) (affirming dismissal on summary judgment because there was no likelihood of confusion between the marks FROOTEE ICE and FROOT LOOPS based on dissimilar appearance); Miller Brewing Co. v. Premier Beverages, Inc., 210 USPQ 43, 48-49 (TTAB 1981) (finding no likelihood of confusion based on dissimilarity between MILLER and OL' BOB MILLER'S); Hershey Foods Corp. v. Cerreta, 195 USPQ 246 (TTAB 1977) (finding no likelihood of confusion based on dissimilarity between A BIG KISS FOR YOU and SEALED WITH A KISS).

ASTON/SMART ALLOCATION ETF FUND consists of five words comprised of 28 characters, while SMART PORTFOLIOS LLC & Design consists of three words comprised of 18 characters and a circular design.  On the other hand, SMART TRUST consists of two words

---

[7] Unlike Defendants, who presented facts from public records in their Motion to Dismiss, Plaintiff has raised a number of facts in its opposition brief that must be excluded.  Not only are they irrelevant to the question of "confusing similarity," but they also are neither part of the complaint nor part of the public record.  Although the Court has discretion to convert the motion to one for summary judgment, Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 559-60 (3d Cir. 2002), neither party has requested that, and such conversion would be premature since the parties have engaged in no discovery and the parties have not followed the briefing schedule commensurate with a Rule 56 motion.  See Gooden v. Township of Monroe, No. Civ. 05-2472 (RBK), 2006 WL 591916, at *1-2 (D.N.J. Mar. 7, 2006).  As such, the matters Plaintiff has presented outside the Complaint must be excluded in considering Defendants' Motion to Dismiss.

6

{00333852.4}

comprised of 10 characters; SMARTGROWTH consists of one word comprised of 11 characters; and 10K SMARTTRUST consists of two words comprised of 13 characters.

Such patent dissimilarity of the marks precludes a likelihood of confusion. E.g., American Cyanamid, 54 F. Supp. 2d at 390; see also Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1243 (Fed. Cir. 2004); Bell Labs., Inc. v. Colonial Prods., Inc., 644 F. Supp. 542 (S.D. Fla. 1986) (finding no likelihood of confusion based on dissimilarity between FINAL and FINAL FLIP); Champagne Louis Roederer, S.A. v. Delicato Vineyards, 148 F.3d 1373, 1375 (Fed. Cir. 1998) (denying injunction after finding of no likelihood of confusion between (a) CRISTAL and CRISTAL CHAMPAGNE and (b) CRYSTAL CREEK wines).

### B.   Sound

Just as ASTON/SMART ALLOCATION ETF FUND and SMART PORTFOLIOS LLC & Design are visually distinct from SMART TRUST, SMARTGROWTH, and 10K SMARTTRUST, the marks are also verbally dissimilar. See Jet, Inc. v. Sewage Aeration Sys., 165 F.3d 419 (6th Cir. 1999) (finding the marks JET and AEROB-A-JET visually and verbally distinct). The marks have only one component in common – the word SMART. As such, the marks are strikingly phonetically dissimilar. See Shen, 393 F.3d at 1243. Plaintiff's overbroad claim that it owns all marks containing some form of the word SMART is frivolous and it should be rejected before more time and resources of the parties and this Court are wasted. See Gruner + Jahr USA Pub'g v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993) (reasoning that the registration of a word does not by itself "remove it from being available to others" or "grant exclusive possession" of variations of the word to the trademark registrant).

### C.   Commercial Impression

In determining whether two marks have similar commercial impressions, the Court should look at whether purchasers or prospective purchasers of goods labeled SMART TRUST,

7

{00333852.4}

SMARTGROWTH, and 10K SMARTTRUST would mistakenly believe, upon encountering ASTON/SMART ALLOCATION ETF FUND and SMART PORTFOLIOS LLC & Design, that the marks originated with Plaintiff. See e.g., American Cyanamid, 54 F. Supp. 2d at 387 (noting that "the Court compares the overall impression of the marks, as a consumer normally would in the marketplace, to determine if it is likely that they would create confusion in the mind of an ordinary purchaser."). The only reasonable conclusion is "No." The respective parties' marks evoke completely different images in the minds of consumers. The marks are pronounced differently and have only one word in common. Compare with In re Bioneurix Corp., 2006 WL 802403 (TTAB 2006) ("[Because the marks "AMORIN" and "AMORYN" only differ by one letter and may be pronounced identically, we find that the commercial impression of the marks is highly similar, if not the same.").

Based on the foregoing, there is no confusing similarity as a matter of law. As such there is no likelihood of confusion, no dilution and no basis upon which to cancel the SMART PORTFOLIOS LLC & Design registration. Plaintiff's conclusory allegations of confusing similarity are not enough to survive dismissal. See International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996) (affirming district court's grant of summary judgment where there was no issue of fact respecting likelihood of confusion and noting, "[to] demonstrate likelihood of confusion a markholder (or one claiming by, through, or under her) must show more than the theoretical possibility of confusion."). Consequently, Plaintiff's Complaint should be dismissed.

### D.    Connotation

SMART has an obvious connotation, and is frequently used as part of trade names and marks. In fact, there is a plethora of marks that incorporate the word SMART, even when

examining only those marks registered in Class 36 (financial services).[8]  These include over 30 marks, all of which have all been registered by the United States Patent and Trademark Office.  See Exhibits A and B to Second Declaration of Paul Kruse (filed contemporaneously herewith).

Clearly, SMART is a common and weak term.[9]  The word SMART is frequently contained in other registered marks and, moreover, is frequently used by others to refer to the financial services they offer.  Consequently, Plaintiff cannot as a matter of law claim sole ownership over SMART.

## IV. Since the Marks are Dissimilar, All Plaintiff's Claims Must Fail as a Matter of Law

Where, as a matter of law, competing marks are found not to be confusingly similar, a court must dismiss claims of trademark infringement *and dilution*, since both claims require a threshold finding of confusing similarity between the marks.  See American Cyanamid, 54 F. Supp. 2d at 392 (dismissing the dilution claim and explaining that, for dilution to occur, "the marks must at least be similar enough that . . . customer[s] see[] the two marks as essentially the same.").  In holding that the plaintiff's dilution claim fails as a matter of law, the court held that "a substantial similarity must exist between the marks so that the junior and senior marks could be found to evoke an 'instinctive mental association' of the two."  Id. (quoting Ringling Bros-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev't., 170 F.3d 449, 458 (4th Cir. 1999)).

---

[8] Plaintiff's attempt to confine the relevant universe to ETF funds is artificial.  The relevant universe is Class 36 and financial services.

[9] The concept of *jus tertii*, raised by Plaintiff in its Opposition Brief, is a red herring and has no bearing here.  In their Motion to Dismiss, Defendants pointed to the widespread use of the term SMART in marks used in Class 36 (financial services), all of which are matters of public record, to show the weakness of the mark.  Plaintiff, itself, concedes that "third party use can be relevant with respect to strength of a mark . . . ."  Plaintiff's Opposition Brief (Doc. 16) at p. 14 of 23.  In the very same authority cited by Plaintiff, McCarthy distinguishes *jus tertii* from other defenses, such as the one asserted here by the present Defendants.  McCarthy writes: "Similarly, defendant's claim that plaintiff has failed to sue other infringers . . . is not *jus tertii*, but rather a claim that the strength of plaintiff's mark has been weakened by widespread use."  6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31:157.

9

Similarly, where claims of unfair competition and cancelation of a trademark registration are based on the same underlying facts that form a trademark infringement or dilution claim, as in the present case, they must be dismissed as a matter of law when the marks are not confusingly similar.

**V.    Plaintiff Concedes its Fame, if Any, is Niche Fame, Which is Insufficient to Establish a Dilution Claim under the TDRA, as a Matter of Law**

The lack of confusingly similar marks, by itself, justifies dismissal of Plaintiff's dilution claim. In addition, the Court must dismiss the claim because Plaintiff has failed to aver any facts that would lead to the conclusion that its marks have attained "fame," as defined in the Trademark Dilution Revision Act of 2006 ("TDRA"). In its Opposition, Plaintiff is incorrect that the TDRA merely *discouraged* niche fame and did not eliminate it.[10] To the contrary, the statute explicitly states: "[A] mark is famous if it is widely recognized by the general consuming public of the United States . . . ."[11]

Plaintiff's reliance on a student-written law review note[12] to support its position that the TDRA did not eliminate niche fame is inaccurate. In the middle of the block quote on page 18 of 23 of Plaintiff's Response, the student author states: "The TDRA formally adopted the position that a famous mark must be sufficiently famous *to the general public, rather than a niche market*."[13]  Plaintiff's own authority supports Defendants' position that nationwide fame is required to make out a dilution claim under the TDRA.

---

[10] See Plaintiff's Resp. to Defendants' M. to Dismiss (Doc. 16) at p. 18 of 23.
[11] 15 U.S.C. § 1125(c)(2)(A).
[12] See Plaintiff's Resp. to Defendants' M. to Dismiss (Doc. 16) at p. 18 of 23, text accompanying nn. 7-15. At page 17 of 23 of Plaintiff's Response, Plaintiff also quotes from an unreported case styled WMS Gaming, Inc. v. Jess Thornhill, but provides an incomplete citation. Defendants have been unable to locate any case on Westlaw involving these two parties or by searching for the specific language Plaintiff quotes from the WMS case.
[13] Id. at p. 18 of 23 (quoting Note, The Current State of Anitdilution Law: The Trademark Dilution Revision Act and the Identical Mark Presumption, 57 DePaul L. Rev. 571, 585 (2008).

{00333852.4}

The Complaint fails to plead any facts to support a finding of nationwide fame. Accordingly, Count IV of the Complaint should be dismissed.

## VI. Dismissal Should Be *With Prejudice* Since Any Amendment to the Complaint Would be Futile

Dismissal of the present Complaint should be with prejudice as any amendment that Plaintiff could offer[14] would be futile since Plaintiff's three marks and Defendants' two marks are not confusingly similar. Although leave should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), "a District Court may deny leave to amend on the grounds that amendment would . . . be futile." Winer Family Trust v. Queen, 503 F.3d 319, 330-31 (3d Cir. 2007). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under rule 12(b)(6)." Parker v. Google, Inc., 242 Fed. Appx. 833, 2007 WL 1989660 at *5 (3d Cir. July 10, 2007) (affirming dismissal of the Lanham Act claim with prejudice and affirming denial of the plaintiff's motion to amend the complaint as futile).

## VII. Conclusion

For the foregoing reasons, Defendants respectfully request that the Complaint in its entirety be dismissed with prejudice.

---

[14] Plaintiff closes its Opposition to the Motion to Dismiss by arguing that any deficiencies to the Complaint could be cured by an amendment. Plaintiff has neither moved to amend nor offered any proposed amendments.

11

{00333852.4}

                                        Respectfully submitted,

Dated:  December 12, 2008        ROBINSON, WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400
lwettre@rwmlegal.com

BY:   *s/ Leda Dunn Wettre*
       Leda Dunn Wettre

                -and-

Stephen J. Zralek, Esq.
Bone McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
(615) 238-6305
szralek@bonelaw.com

*Attorneys for Defendants*
*Aston Asset Management, LLC and Smart Portfolios, LLC*

12

## CERTIFICATE OF SERVICE

I certify that on December 12, 2008, I caused a copy of the foregoing to be served upon plaintiff's counsel of record via the Court's electronic filing system and email.

*s/ Leda Dunn Wettre*_____
Leda Dunn Wettre