**Leda Dunn Wettre, Esq.**
**ROBINSON, WETTRE & MILLER LLC**
**One Newark Center, 19th Floor**
**Newark, New Jersey 07102**
**(973) 690-5400 (tel)**
**lwettre@rwmlegal.com**

**and**

**Stephen J. Zralek, Esq.**
**BONE McALLESTER NORTON PLLC**
**Nashville City Center**
**511 Union Street, Suite 1600**
**Nashville, Tennessee 37219**
**(615) 238-6300 (tel)**
**szralek@bonelaw.com**

**Attorneys for Defendants Aston Asset Management, LLC**
**and Smart Portfolios, LLC**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**HENNION & WALSH, INC.**

          **Plaintiff,**                 **Civil Action No.: 2:08-cv-04262 (JAG)**

      **v.**                         **HEARING DATE:  MAY 1, 2009**

**ASTON ASSET MANAGEMENT, LLC**
**and SMART PORTFOLIOS, LLC,**
**collectively and individually,**

          **Defendants.**

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A**
**PRELIMINARY INJUNCTION**

{00358631.4}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

I.  Introduction ....................................................................................................... 1

II.  Standard for Preliminary Injunctions  ............................................................. 2

III.  Plaintiff cannot show a likelihood of success on the merits of its Complaint ........................ 4

IV.  Plaintiff Will Not Suffer Immediate, Irreparable Harm if the Court Denies the Preliminary Injunction .................................................................................. 5

V.  A Preliminary Injunction Will Harm the Defendants and Cause More Harm Than Not Ordering an Injunction ......................................................................... 6

VI.  A Preliminary Injunction in This Case Will Harm the Public Interest ................................. 8

VII.  Conclusion ..................................................................................................... 9

# TABLE OF AUTHORITIES

## Cases

Acierno v. New Castle County, 40 F.3d 645, 653, 655 (3d Cir. 1994) ...................................... 3, 5

Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989)........................................... 8

Cont'l Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 358 (3d Cir.1980) ........................ 3, 6

Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir.1988) ............... 2

Instant Air Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800, 801 (3d Cir.1989)
................................................................................................................................................. 2, 5

Interpace Corp. v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983) ......................................................... 5

Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 726-27 (3d Cir. 2004) ........................ 1

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d
578, 596 (3d Cir. 2002)........................................................................................................... 7

Optician's Ass'n of America v. Indep. Opticians of America, 920 F.2d 187, 197 (3d Cir. 1990)
................................................................................................................................................. 6,7,8

S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir.1992)........................................ 3

## Other Authorities

Fed. R. Civ. Pro. 65(c) .................................................................................................................. 2

11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (2d ed.
1987) .................................................................................................................................... 3, 4

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 1.01 (3d ed. 1996).. 8

## I.   __Introduction__

Defendants file this answering brief in opposition to Plaintiff's motion for a preliminary injunction.  Defendants submit that Plaintiff's motion is moot and that, in any event, Plaintiff is not entitled to an injunction for the reasons set forth in this brief.   In support of this brief, Defendants rely on the facts set forth in their pending motion to dismiss (docket entry 11) and reply brief (docket entry 18) and on the additional facts set out in the declaration of Mr. Bryce A. James (the "James Declaration"), founder and chief executive officer of Defendant Smart Portfolios, LLC, filed simultaneously with this brief.

To put Plaintiff's request for injunctive relief in temporal and procedural perspective, Plaintiff filed its Complaint on August 22, 2008 (docket entry 1).  The Complaint has not been amended to allege new facts on which injunctive relief is sought.  Defendants filed their motion to dismiss on November 7, 2008 (docket entry 11).  Nearly 7 months after bringing suit, and after Defendants' motion to dismiss had been pending for almost 4 months, Plaintiff filed its motion for a preliminary injunction on March 6, 2009 (docket entry 21)[1].  Defendants respectfully submit that injunctive relief is nothing more than a last-minute, defensive response to

---

[1] Plaintiff asserts that this time delay is not dispositive and cites Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 726-27 (3d Cir. 2004), in support.  However, the delay cited by Defendants is distinguishable from Kos.  In Kos, the plaintiff sought preliminary injunctive relief at the same time it filed its complaint.  See Kos Pharmaceuticals, 369 F.3d 706.  The defendant argued that the time delay between plaintiff's knowledge of possible confusion and filing its complaint and motion for preliminary injunction was inconsistent with immediate, irreparable harm.  Id. at 726-27.

In this case, however, the delay is between the filing of the complaint (after Plaintiff's contact with the allegedly confused consumers) and filing of the motion for preliminary injunction.  Plaintiff states that the alleged confusion "abated" but argues that it has returned without further evidence of actual confusion.  See Plaintiff's Brief in Support of Plaintiff's Motion for a Preliminary Injunction (docket entry 21), at p.27.  Importantly, Plaintiff offers no other evidence of actual confusion, through hearsay testimony or otherwise.

Defendants' motion to dismiss and that the Court should consider the merits of the motion to dismiss first.

Substantively, Plaintiff is not entitled to an injunction because (i) it is unlikely to succeed on the merits of its Complaint; (ii) it cannot prove that it will suffer immediate and irreparable harm without the injunction; (iii) the injunction will cause more harm than not ordering an injunction; and (iv) the public interest is not served by the injunction.  Defendants respectfully submit that the fact that Plaintiff took nearly 7 months to seek preliminary injunctive relief bears practical importance to the Court's analysis.

If the Court disagrees with Defendants and orders a preliminary injunction, Defendants submit that a bond is required and that because of the costs of preliminary injunctive relief in this case, the bond should be substantial.  See Fed. R. Civ. P. 65(c).[2]  If the Court orders preliminary injunctive relief, Defendants would propose a bond in the amount of no less than $430,000 based on the costs and financial damages set forth in the James Declaration.

## II.  <u>Standard for Preliminary Injunctions</u>

The Third Circuit and district courts within the Third Circuit repeatedly have recognized that injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances."  <u>See</u>, <u>e.g.</u>, <u>Instant Air Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir.1989) (citing <u>Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp.</u>, 847 F.2d 100, 102 (3d Cir.1988)).  Defendants do not dispute that Plaintiff accurately has listed the four elements required for a preliminary injunction: (i) likelihood of success on the merits of the underlying claim(s); (ii) irreparable harm; (iii) danger of causing more harm by issuing the

---

[2] Defendants submit that a bond, or security, in an amount to pay for the enjoined party's damages in the event of wrongful injunction is mandatory:  "The court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that court considers proper to pay the costs and damages" in the event of wrongful injunction.  Fed. R. Civ. P. 65(c) (emphasis added).

{00358631.4}

injunction than by not doing so; and (iv) the level of harm to the public interest.  See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir.1992).  Defendants emphasize that all four factors should "favor preliminary [injunctive] relief."  Id.  The burden of proof is on Plaintiff with respect to the first two factors, and the Court should take up the last two factors if Plaintiff meets its burden.  Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994).

Plaintiff notably has failed to acknowledge that the Third Circuit has held that injunctive relief requires a "clear showing of *immediate* irreparable injury" or a "presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury." Cont'l Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 358 (3d Cir.1980) (emphasis added). Defendants submit that Plaintiff's procedural maneuverings, in light of the facts of this case, belie a claim of immediate harm.

The lack of immediacy of Plaintiff's alleged harm is relevant with respect to the proof offered by Plaintiff in support of its motion.  Plaintiff's "evidence" of actual confusion consists entirely of inadmissible hearsay.  Defendants acknowledge that courts may consider hearsay testimony with respect to preliminary injunctions, but the rationale for considering such testimony is rooted in the immediacy of a request for preliminary injunctive relief.  See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (2d ed. 1987). For example, certain witnesses may not be immediately available to testify, and the proof offered may only be available through hearsay.  In this case, however, Plaintiff has had nearly a full year to locate and arrange for testimony, subject to cross-examination, by the allegedly confused individuals cited in Mr. Kevin Mahn's declaration.  Defendants respectfully submit that this fact should be considered as the Court weighs ordinarily inadmissible hearsay evidence.

**III.**    **Plaintiff cannot show a likelihood of success on the merits of its Complaint.**

Defendants obviously dispute that Plaintiff can succeed on the merits of its Complaint. Almost four months ago, Defendants moved to dismiss Plaintiff's Complaint because it fails to state a claim upon relief may be granted. Defendants analyze the likelihood of confusion of the subject marks in their motion to dismiss (docket entry 11) and their reply to Plaintiff's opposition to dismissal (docket entry 18), and they adopt and incorporate by reference the arguments set forth therein. Specifically, the most important issue is whether Defendants' marks—ASTON / SMART ALLOCATION ETF FUND and SMART PORTFOLIO'S, LLC (mark and design)— are *confusingly similar* to Plaintiff's three marks: SMARTGROWTH, SMART TRUST, and 10K SMARTTRUST. For the reasons set forth in their motion to dismiss and reply brief, Defendants assert that the answer is "no" and that Plaintiff therefore cannot succeed on the merits of its Complaint. In short, Plaintiff wants to lay claim over the word "Smart" (even though Plaintiff's subject marks use well more than just that single word and/or character), but Plaintiff will not be able to prove a protectable trademark interest in the word "Smart".

Plaintiff cites its belief that there is actual confusion to support its argument that it can succeed on its infringement claim, but the Court should not weigh this "evidence" as heavily as Plaintiff would like. See id. ("Once received, … the question of how much weight an affidavit will be given is left to the trial court's discretion.").

*First*, as already noted, it consists of hearsay that has been proffered for the first time seven months after Plaintiff filed its Complaint, and of the three allegedly confused individuals, two are completely unidentified and unidentifiable. Plaintiff's witness, Mr. Mahn, testifies that he *believes* he knows the identity of the third individual. *Second*, Plaintiff stated in its brief that the alleged confusion "abated". See note 1, *supra*. Plaintiff argues ongoing confusion but does so without further proof, including hearsay testimony, of same. There is no evidence of the

identity of the blogger referenced by Plaintiff. *Third*, evidence of actual confusion is only one of the <u>Lapp</u>[3] factors that the Court must consider in connection with its determination of Plaintiff's likelihood of success on the merits of its suit. *Fourth*, Plaintiff argues in its motion, and sets forth in affidavit testimony, that Plaintiff's funds have generated substantial press and that Plaintiff is "well known in the industry as the source of the highly regarded SmartGrowth Funds." <u>See</u> Plaintiff's Brief in Support of Plaintiff's Motion for a Preliminary Injunction (docket entry 21), at p.28. The fact that Plaintiff is so "well known" as the funds' source cuts directly against alleged evidence of actual confusion.

Notwithstanding their arguments in their motion to dismiss, Defendants submit that consideration of the other <u>Lapp</u> factors mitigates in favor of denial of preliminary injunctive relief. Specifically, Plaintiff attempts to lay claim to the word "Smart", the only similarity between the subject marks, and Defendants submit that this is not enough; "Smart" is not a reasonable abbreviation for the parties' various funds. The care and attention expected of financial service professionals, the "confused" consumers cited by Plaintiff, should be higher than non-trained, routine investors. Also, there is no proof of intent on the part of Defendants in connection with the marks.

## IV.   **<u>Plaintiff Will Not Suffer Immediate, Irreparable Harm If the Court Denies the Preliminary Injunction.</u>**

With specific regard to irreparable harm, the Third Circuit holds that the movant must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." <u>Instant Air Freight</u>, 882 F.2d at 801. The harm must be more than possible, and it cannot be speculative or remote. <u>Acierno</u>, 40 F.3d 645 at 655. Further, and as already

---

[3] <u>Interpace Corp. v. Lapp, Inc.</u>, 721 F.2d 460 (3d Cir. 1983). Plaintiff lists the "<u>Lapp</u> factors" in its brief at p. 17, and Plaintiff correctly has recited same.

noted, injunctive relief requires a "clear showing of immediate irreparable injury."  Cont'l Group, Inc. 614 F.2d 351 at 358.

As set forth in the Defendants' motion to dismiss, companies other than the Defendants have registered marks and named investment funds using the word "Smart".  It is Plaintiff's right to sue whom Plaintiff chooses, but failing to include the other parties that incorporate the word "Smart" in registered marks and investment fund names—if Plaintiff truly believes that it has a protectable interest in "Smart" (as opposed to its full marks)—is indicative of Plaintiff's misconceived perception of harm.  If Plaintiff is going to suffer irreparable harm, why not seek to stop all users of the word "Smart" in connection with investment vehicles?  In fact, the parties have been using "Smart" in their respective marks for some time, and Plaintiff artificially inflates the potential irreparable harm.  Because of other, successful companies' use of the word "Smart", an injunction will be of little benefit to Plaintiff.

Plaintiff has offered no proof relative to the immediacy of any alleged harm.  For example, there is no evidence that the "confused" industry conference attendees referenced in Mr. Mahn's Declaration (or any other person) actually invested money or securities with, or recommended that clients do so, Defendant Smart Portfolios, LLC or in the Aston/Smart Allocation ETF Fund thinking that they were investing in or recommending Plaintiff's subject funds. Plaintiff has not sufficiently proven irreparable harm, nor shown that any claimed "irreparable harm" is immediate.

## V.  A Preliminary Injunction Will Harm the Defendants and Cause More Harm Than Not Ordering an Injunction.

To determine "whether injunctive relief is appropriate," the "trial court must … balance the hardships to the respective parties", considering the specific facts relative to the particular case.  Optician's Ass'n of America v. Indep. Opticians of America, 920 F.2d 187, 197 (3d Cir.

1990).  As this Court recently noted, important facts to determine whether a preliminary injunction will cause irreparable harm to the defendant (or otherwise will cause more harm than not ordering an injunction) include financial loss to a defendant complying with the preliminary injunction; whether such financial loss was self-imposed because of the defendant's choices; and whether the defendant had any prior knowledge of infringement.  See, e.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 596 (3d Cir. 2002); Optician's Ass'n of America, 920 F.2d at 197.

In this case, the James Declaration establishes that the costs of a preliminary injunction to Defendant Smart Portfolios, LLC alone would be no less that $430,000 in hard costs (and likely much more) because of the name change it would have to undertake.  See James Declaration, at ¶¶ 13, 16-18.  In addition to the hard costs set forth in the James Declaration, Defendant Smart Portfolios, LLC will have wasted, in large part, countless marketing and development efforts if the company is forced to change its name because of Plaintiff's weak hearsay evidence.  Id. at ¶¶ 16-17, 19-20.  Because of the vast costs involved with the preliminary injunction, especially with respect to the mark SMART PORTFOLIOS LLC, Defendants could not re-institute their marks even if permanent injunctive relief were denied.  Id. at ¶¶ 11-20.  *The result is that any preliminary injunction that is granted effectively would become a permanent injunction.*

The expected financial loss attendant with a preliminary injunction was not self-imposed by Defendants.  As businesses behaving reasonably, Defendants had no knowledge of potential infringement on Plaintiff's "mark."  Id. at ¶¶ 21-22.  The only commonality between Defendants' marks and Plaintiff's marks is the word "Smart".  See id.  All of the subject marks use additional words, letters, and/or design.  In fact, when Defendant Smart Portfolios, LLC sought to register its mark, SMART PORTFOLIOS LLC, with the United States Patent and Trademark Office ("PTO"), the examining attorney found only one source of possible confusion: the pre-existing

{00358631.4}

mark JANUS SMART PORTFOLIOS, owned by Janus International Holding LLC.[4] Significantly, the PTO examining attorney found no other possible sources of confusion, including Plaintiff's marks.  <u>See</u> Declaration of Paul Kruse, Esq. (and the exhibits attached thereto) filed with Defendants' motion to dismiss (docket entry 11).  Further supported by the James Declaration, Defendants did not foresee possible infringement.  <u>See</u> James Declaration., at ¶¶ 21-22.  Defendant Smart Portfolios, LLC has been using its name and mark since at least April 2005, and the Aston/Smart Allocation ETF Fund was established over one year ago.  <u>See</u> Declaration of Paul Kruse, Esq. (and the exhibits attached thereto) filed with Defendants' motion to dismiss (docket entry 11).

## VI.   <u>A Preliminary Injunction in This Case Will Harm the Public Interest.</u>

In ordering injunctive relief, the Court must be mindful of the public's interest in free competition.  Free market principles, notably competition, have led to the "evolution" of free competition in "business ideas and intellectual creations."  1 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, § 1.01 (3d ed. 1996).  "Legally protected zones of exclusive rights, such as patents, trademarks and copyrights, are exceptions to this general principal of the free copying and imitation."  <u>Id.</u>  The United States Supreme Court has reiterated this concept.  <u>See</u> <u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>, 489 U.S. 141 (1989); 1 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, at § 1.01.  The Court must also consider the public's right not to be confused.  <u>See</u> <u>Optician's Ass'n of America</u>, 920 F.2d at 197.

---

[4] Defendant Smart Portfolios, LLC and Janus International Holding LLC reached an agreement with each other, allowing registration of both marks.  <u>See</u> Declaration of Paul Kruse, Esq. (and the exhibits attached thereto) filed with Defendants' motion to dismiss (docket entry 11).

A preliminary injunction would harm the public interest.  The preliminary injunction sought by Plaintiff is too broad—to the extent that Plaintiff seeks to enjoin Defendants from the use of their marks based only on the common word "Smart"—and to the extent that Plaintiff's alleged proof of actual confusion is so weak.  Because Plaintiff's remedy cuts against free competition, Plaintiff's claim must be rock solid.  It is not.  Because Plaintiff is unlikely to succeed on the merits, the public's right to not be confused is not violated by the simultaneous use of Defendants' and Plaintiff's marks.

**VII.    <u>Conclusion</u>**

For the foregoing reasons, the Defendants respectfully request that the motion for preliminary injunction be DENIED.  Defendants request the opportunity to present live testimony and to cross examine Plaintiff's witnesses at the hearing on Plaintiff's motion for preliminary injunction.  In the event the Court orders preliminary injunctive relief, Defendants respectfully request that Plaintiff be ordered to post a bond in an amount of no less than $430,000.

Respectfully submitted,


Dated:  April 6, 2009                    ROBINSON, WETTRE & MILLER LLC
                                         One Newark Center, 19th Floor
                                         Newark, New Jersey 07102
                                         (973) 690-5400
                                         lwettre@rwmlegal.com

                                  BY:    *s/ Leda Dunn Wettre*
                                         Leda Dunn Wettre

                                              -and-

                                         Stephen J. Zralek, Esq.
                                         Bone McAllester Norton PLLC
                                         511 Union Street, Suite 1600
                                         Nashville, TN 37219
                                         (615) 238-6305
                                         szralek@bonelaw.com

                                         *Attorneys for Defendants*
                                         *Aston Asset Management, LLC and Smart*
                                         *Portfolios, LLC*


## CERTIFICATE OF SERVICE

I certify that on April 6, 2009, I caused a copy of the foregoing and a copy of the Declaration of Bryce A. James to be served upon plaintiff's counsel of record via the Court's electronic filing system and email.


                                         *s/ Leda Dunn Wettre*
                                         Leda Dunn Wettre